BARBARA C. TIPPIN *v.* CHARLES R. TIPPIN

KING, MURPHY, MELLITZ, DEVLIN and PASTORE, Js.

Argued November 1—decided December 6, 1960

*Frederick Pope, Jr.,* for the appellant (plaintiff).

*Ralph C. Dixon,* with whom, on the brief, was *John Crosskey,* for the appellee (defendant).

KING, J.  The plaintiff and the defendant, her former husband, have two children, Nancy Jane, born April 24, 1948, and Corey Grant, born December 29, 1949.  In 1955, the plaintiff instituted divorce proceedings against the defendant.  After a lengthy hearing and an investigation by an experienced probation officer, the court, on November 21, 1955, awarded the defendant custody of both children, pendente lite.  On April 13, 1956, the defendant was granted an uncontested divorce on his counterclaim.  In accordance with the terms of a written agreement of the parties which was submitted to the court, custody of the two children was awarded to the defendant subject to reasonable privileges of visitation in the plaintiff.  Since the date of the award pendente lite, the children have been with their father, the defendant, at his home in Essex.  Up until the time of the marriage of the defendant to his present wife,

Theresa J. Tippin, on November 14, 1958, the children were cared for by him and his mother. Since that time they have been cared for by the defendant and his present wife.

In July, 1956, the plaintiff was married to Jack Stock, an attorney. Since that time she has lived with him in Redding. On November 30, 1956, the defendant entered into a stipulation with the plaintiff for the modification of the custody order to enlarge her visitation privileges, and on December 1, 1956, the court modified the order in accordance with the terms of the stipulation. On June 5, 1958, the plaintiff filed another motion for modification of the decree as to custody. The probation officer who had previously investigated did so again and made a full report. Hearings were held on the plaintiff's motion, and in July, 1959, the court denied it, writing an extended memorandum of decision which showed a careful, sympathetic and understanding consideration of the claims of the parties and the rights of their children. The real question before the court was whether the plaintiff had proved such a change of circumstances, since the date of the rendition of the existing custody award, that the welfare of the children required that the award be modified. The only change of circumstances actually found proven by the court was the defendant's marriage to the present Mrs. Tippin and the substitution of her for his mother in the management of his home and the rearing of his children. This change was not found to have adversely affected the welfare of the children.

The plaintiff's sole ground for her claim that the defendant was no longer a suitable person to have custody of the children was that he and his present wife were not legally married. See cases such as

*Commonwealth ex rel. Thompson* v. *Yarnell,* 313 Pa. 244, 169 A. 370. The claimed invalidity in the marriage was predicated solely on the ground that Theresa J. Tippin's Alabama divorce from her former husband, David P. Perry, was void for lack of jurisdiction because neither of the parties to it had a domicil in Alabama. *Santangelo* v. *Santangelo,* 137 Conn. 404, 407, 78 A.2d 245; Restatement, Conflict of Laws § 111. The court found that the present Mrs. Tippin was granted a divorce from her former husband on February 21, 1958, in Alabama; that she went to Alabama on February 18, 1958, which was the date her divorce complaint was filed; that she obtained a leave of absence from her employment in Connecticut, retaining her apartment in Essex; that she went to Alabama for the purpose of securing a divorce and was in Alabama about three days; and that she thereafter immediately returned to her apartment in Essex and resumed her job. The plaintiff, in her appendix, has printed a copy of the divorce proceedings in Alabama. These show that Perry, the defendant in that action, appeared by attorney on February 3, 1958; that the parties entered into an agreement as to alimony and their respective property rights; that this agreement was incorporated by reference in the divorce decree; and that the decree contained a finding that the court had jurisdiction of the parties and of the cause of action. See *Cook* v. *Cook,* 342 U.S. 126, 128, 72 S. Ct. 157, 96 L. Ed. 146. Whether Perry has remarried does not appear in the finding. See *Whitney* v. *Heublein,* 145 Conn. 154, 160, 139 A.2d 605.

In its memorandum of decision in the instant case, the court stated that the welfare of the children was the paramount consideration in this custody controversy. This of course was indisputably correct.

It further stated that the children had been very happy and well cared for during the entire time they had been with their father, and had gotten along well in school and in children's community projects and relationships, and that "[t]o go behind . . . [the Alabama divorce] proceeding and decide the present controversy [as to custody] solely on . . . [the] ground [of the validity or invalidity of the present Mrs. Tippin's divorce] would divert the Court from its primary obligation." In effect, the court refused to adjudicate the validity of the present Mrs. Tippin's divorce. This refusal is the real error claimed on this appeal.

It is important to note that the plaintiff did not claim that Theresa J. Tippin procured the Alabama divorce by personal fraud or perjury, or knew of any infirmities in it, or indulged in any improper or unethical conduct in procuring it. She acted throughout on the advice of counsel, and if this advice, or the conduct of her counsel in handling the divorce proceeding, was legally erroneous, or even corrupt, it proves no lack of moral character, nor any ethical shortcomings, on her part. After her marriage to the defendant, she in effect assumed a position in loco parentis as to the defendant's children, who lived in his home. Consequently, a basic lack of moral character on her part, whether manifested by conscious, serious misconduct in procuring a divorce by fraud or perjury, or by conscious, serious misconduct in any other connection, would be a proper subject of consideration in determining the environment in which the children would be brought up if they were left in the custody of their father. Evidence of this nature would not constitute an attack on the validity of the divorce but an attack on the character of Mrs. Tippin, relevant because of her

position, with respect to the upbringing of the children, in her husband's household.

Since the plaintiff here was not a party to the Alabama divorce proceedings, she is a stranger making a collateral attack on the decree. To have any standing to make such an attack, she would have to prove, at the outset and as a first issue, that she had a legally protected interest adversely affected by the decree. 27B C.J.S. 833 § 355, 844 § 359; 17 Am. Jur. 627, § 532. Otherwise, she would have no standing to call in question the validity of the Alabama divorce, to which she was a stranger. *Tyler* v. *Aspinwall,* 73 Conn. 493, 499, 47 A. 755; *Santangelo* v. *Santangelo,* 137 Conn. 404, 407, 78 A.2d 245. A collection of cases on the right of a stranger to make a collateral attack on a foreign divorce decree may be found in the annotation in 12 A.L.R.2d 717, and in A.L.R.2d Supplement Service (1960) at page 863.

The question of the standing of the plaintiff to make a collateral attack on the decree is entirely distinct from, and not to be confused with, the second issue confronting her in making such an attack, which involves the burden of proving facts essential to show that the attack is well founded on the merits. While, as pointed out in the annotation in 12 A.L.R.2d at page 719, some cases in other jurisdictions have failed clearly to distinguish between these two issues, our cases have recognized the distinction. *Tyler* v. *Aspinwall,* supra; *Santangelo* v. *Santangelo,* supra. In our view of this case, we need consider only the first issue.

The plaintiff makes no claim that her own divorce from the defendant is invalid. Indeed, she has long since remarried. Therefore, she has no rights of inheritance, support, or marital status which could be in any way affected by the Alabama decree and the

subsequent marriage of her former husband. The decree, when it was rendered, had no adverse effect on the plaintiff's claim to an interest in the custody of her children. See *Santangelo* v. *Santangelo,* supra. It is only because the defendant happened to marry the present Mrs. Tippin that the plaintiff even claims, in connection with the custody of her children, to have any standing to attack the validity of Mrs. Tippin's divorce and thus the marital status of the plaintiff's former husband and his present wife. It is true that the attack by the plaintiff on the validity of the Alabama decree might create, and perhaps already has created, embarrassment for her children. If it were so that she could make an attack and it were successful and thereafter the defendant and his present wife continued to live together, it might be said that the plaintiff's interests in the custody and welfare of her children had been adversely affected and that such conduct would be a factor appropriate for consideration in determining whether a change of custody should be made. But these adverse results would come, not from the Alabama decree, but from the plaintiff's attack on it. The plaintiff cannot create an adverse effect on her interests which would not otherwise exist, merely by attempting to raise an issue which she is without standing to raise. She cannot, by her own acts, confer on herself a standing, which she would not otherwise have, to attack the Alabama decree. She cannot establish a standing by pointing to a situation which could arise only if she had a standing. The court's refusal to adjudicate the validity of the Alabama divorce of the present Mrs. Tippin at the behest of the plaintiff was correct.

There is no error.

In this opinion the other judges concurred.