## SUSAN J. COCCO v. CURTIS E. COCCO

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 97384 F.R.

Memorandum filed March 20, 1962

*Jacobs, Jacobs, Jacobs & Jacobs,* of New Haven, for the plaintiff.

No appearance filed for the defendant.

PASTORE, J. Plaintiff sues for an annulment under § 46-28 of the General Statutes because of the alleged invalidity of the divorce defendant had procured from his first wife, Elizabeth Velleca Cocco, in the state of Chihuahua, Republic of Mexico, on May 25, 1959. In the present matter defendant does not appear and the matter was presented ex parte.

Plaintiff, Susan J. Cocco, and defendant were married June 27, 1959, in New Haven. They cohabited as husband and wife until October, 1961, when they separated because of his interest in another woman. Plaintiff has no children by this marriage. Plaintiff claims that the defendant's Mexican divorce is a nullity, hence that defendant was still married to his first wife when plaintiff married him, and that her own marriage is therefore bigamous and void.

From the Mexican divorce decree it appears that the plaintiff there, Curtis E. Cocco, filed his divorce suit April 27, 1959, that his then wife was served by correspondence, that she did not appear to defend the action and that, among other matters, the divorce was granted May 25, 1959. Her testimony in court here corroborated her failure to appear in that action. It further appears from a file of this court of which judicial notice is hereby taken

(No. 90473 F.R.) that said Curtis E. Cocco brought a divorce action against his then wife, Elizabeth V. Cocco, by writ dated April 17, 1959, duly served upon her, returned to the Superior Court at New Haven, state of Connecticut, the first Tuesday of June, 1959, which, after some defensive action, was withdrawn August 17, 1959. In this case, Curtis E. Cocco described himself as a resident of the town of West Haven in the state of Connecticut.

In the opinion of the court, there are two main grounds requiring the denial of the annulment. The first one relates to the legal power of the plaintiff to attack the divorce decree. Since she was not a party to the Mexican divorce proceedings, she is a stranger making a collateral attack on the decree. "To have any standing to make such an attack, she would have to prove, at the outset and as a first issue, that she had a legally protected interest adversely affected by the decree. . . . Otherwise, she would have no standing to call in question the validity of the . . . divorce, to which she was a stranger." *Tippin* v. *Tippin*, 148 Conn. 1, 6. Since plaintiff married the defendant after the Mexican divorce decree, of which proceedings she had knowledge even before it was rendered, plaintiff had no legally protected interest which could have been affected by the decree itself at the time it was rendered. It is only by virtue of her subsequent marriage that she claims to have any standing to attack that decree rendered between the defendant and his former wife. The decree itself, far from adversely affecting the plaintiff's marriage to the defendant, was a basis of the validity of the marriage, and without which the marriage would have been bigamous ab initio. Plaintiff's marriage would be rendered void only if the Mexican decree were invalidated upon the attack plaintiff herself is making upon that decree. Thus any adverse effects

upon her marriage interests would follow not from the decree itself but from her own attack upon its validity, assuming she were successful. Plaintiff may not have the benefit of a standing or legal power of her own creation, not otherwise existent, to attack collaterally a divorce decree to which she was a stranger. *Tippin* v. *Tippin,* supra, 7. Also, there were no facts proving that such decree adversely affected her marriage interests.

Plaintiff cites two cases in support of her claims, viz. *Chetelat* v. *Chetelat,* 4 Conn. Sup. 209, and *Sarantos* v. *Sarantos,* 18 Conn. Sup. 472. Both these are deemed distinguishable from the instant case in that in both instances the first marriage was in full force and effect at the time of the subsequent marriage, making it invalid because bigamous in nature *(Chetelat,* 210; *Sarantos,* 473), there being no divorce decree actual or colorable at the time of the subsequent marriage. Moreover, in *Chetelat,* the marriage in question was void irrespective of the effect of the subsequent Mexican decree, and in *Sarantos,* the validity of no divorce decree was involved. It is further noted that in *Chetelat,* the plaintiff's standing to attack the foreign divorce decree could find a basis in the plaintiff's pre-existing marriage to the defendant which the decree would tend to nullify.

As to plaintiff's legal power to make the attack, even if it be assumed to the contrary, there is no sufficient proof warranting the court, in its opinion, in finding, as claimed by plaintiff, that the present defendant "never established a legal domicil" in Mexico, and that "he went to Mexico for the sole purpose of obtaining a divorce." The defendant's first wife, who testified, had not seen him since their own separation in January, 1959, and her testimony that she had been made "aware" of his presence again in this state about one month after she had

received the divorce papers was based not upon her own observations or knowledge but upon what she had been told. Also, the fact that defendant described himself as a resident of West Haven in his writ to this court dated April 17, 1959, does not necessarily militate against the finding of the Mexican proceedings initiated April 27, 1959, that he was then a resident there. The evidence did not furnish other indicia of domicil, nor was the record of the Mexican proceedings in evidence except for the judgment file in it. The fact that the defendant wife in the Mexican proceedings did not appear does not of itself necessarily invalidate the judgment. Except as herein noted, no other claim was made or briefed supporting the alleged invalidity of the Mexican divorce decree. Plaintiff has failed to establish her burden of proof in this respect.

Accordingly, the court feels compelled on all grounds above to deny the plaintiff's petition for an annulment.