84 N.J. Super. 396 (1964)
202 A.2d 220
JOSEPH S. GERARD, PLAINTIFF,
v.
PAOLA DISTEFANO, OTHERWISE PAOLA GERARD, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided June 12, 1964.
*398 Mr. Joseph W. Levy for plaintiff (Messrs. Levy, Lemken & Margulies, attorneys).
Mr. Theodore Rabinowitz for defendant-counterclaimant.
NIMMO, J.S.C.
This is an action brought by plaintiff Joseph S. Gerard, wherein he seeks to have his marriage to defendant Paola Distefano Gerard declared a nullity.
The parties to this action were married on October 13, 1962. After their marriage and a two-week honeymoon in Florida, the couple resided together with plaintiff's mother in Jersey City until May 12, 1963, at which time defendant moved out. The events leading up to the final separation, as testified to by the parties at the trial, were contradictory and unclear. Defendant testified that she was compelled to leave the marital abode because of alleged cruel acts on the part of plaintiff and his mother. Defendant in no way substantiated or corroborated these charges, and this court completely disregards them.
Plaintiff alleged in his complaint, and testified at the trial, that defendant at all times refused to consummate *399 the marriage. He alleges that at no time, even during the honeymoon period, did his wife submit to sexual intercourse, although he made repeated requests and attempts. The defendant denied these allegations and maintained that the marriage had been consummated many times. The first count of plaintiff's complaint is based upon defendant's fraud in failing to consummate the marriage. The only proof placed before the court on this count was plaintiff's testimony, as set out above. Fraud as a fact will never be presumed, but must be clearly and convincingly proved by the party who asserts it. Connelly v. Weisfield, 142 N.J. Eq. 406 (E. & A. 1948); Minter v. Bendix Aviation Co., 26 N.J. Super. 268 (App. Div. 1953); Wasserman v. Franklin Trust Co., 142 N.J. Eq. 352 (Ch. Div. 1948). In the absence of additional evidence, plaintiff has failed to meet the burden of proof necessary to justify this court in granting an annullment on the grounds of fraud.
The second and third counts of plaintiff's amended complaint bring the real issues before the court. Plaintiff alleges that defendant fraudulently withheld from his knowledge the fact that she had previously been married and divorced and, furthermore, that the divorce obtained by her former husband was procured by means of a fraud perpetrated upon the Alabama courts and is therefore void.
Defendant Paola had previously been married to her first cousin, one Alfred Cicchetti, on November 18, 1960. They cohabited for about 17 months and then separated because they could not get along.
Paola and Cicchetti were referred to a New York lawyer, who would make arrangements for them to procure an Alabama divorce. As a result of the meeting with the New York lawyer, the necessary answer and waiver was signed by Paola, and on June 6, 1962 Cicchetti made a one-day trip to Alabama. On June 7, 1962 a final decree of divorce was entered in favor of Cicchetti in the Geneva County Superior Court of the State of Alabama in Equity on the grounds of abandonment.
*400 These facts are not in dispute. However, plaintiff alleges that he never had any knowledge of defendant's prior marriage and divorce until April 1963. Defendant testified that plaintiff had full knowledge of all the facts regarding her prior marriage and divorce. The trial was void of any testimony, other than that of the party witnesses, as to whether plaintiff had knowledge of the prior marriage and divorce.
On several occasions both before and after their marriage Paola and Joseph Gerard visited the home of Cicchetti. Since Cicchetti was defendant's first cousin, plaintiff would not be put upon notice to inquire as to the relationship of Cicchetti and Paola since he would not expect them to have been married. Furthermore, if plaintiff knew of the prior relationship between Paola and Cicchetti, it is not reasonable to expect that he would make social calls upon his wife's former husband.
In evaluating the testimony of the parties to this action, and also taking into consideration the conduct of the parties in relation to Cicchetti, this court finds as a fact that plaintiff had no knowledge of defendant's prior marriage and divorce until April 1963.
The fraud necessary to warrant the annulling of a marriage must be such as to go to the very essence of the marriage relationship. Lindquist v. Lindquist, 130 N.J. Eq. 11 (E. & A. 1941); Rhoades v. Rhoades, 10 N.J. Super. 432 (App. Div. 1950). The nondisclosure of a prior marriage and divorce is not such a fraud, for it in no way impedes the carrying out of the marital obligations and does not go to the fundamentals of the relationship.
This lack of knowledge on the part of plaintiff, although in itself insufficient to support a judgment of nullity, becomes important in determining his standing to attack his wife's prior divorce.
There can be no doubt that defendant and her former husband, Cicchetti, collaborated in perpetrating a fraud on the Alabama courts. Neither party, by his own admission, ever in fact was, or ever intended to be, a resident or domiciliary *401 of the State of Alabama. The question for determination here is whether plaintiff, a stranger to the Alabama proceeding, may collaterally attack the Alabama decree in New Jersey in view of the Full Faith and Credit Clause of the United States Constitution, Article IV, Section 1.
Although this point has never been decided by a New Jersey court, other jurisdictions have been faced with similar problems, and there is a divided opinion on this issue. In reviewing and studying the decisions of the various jurisdictions, this court is of the opinion that the sounder view is to permit collateral attack on fraudulent divorce decrees by third parties whose rights are vitally affected.
The parties to the Alabama action do not attack the Alabama decree. Plaintiff, however, by virtue of his marriage to defendant without knowledge of her prior conduct, maintains he has standing to attack this divorce as a party whose rights are vitally affected.
Both parties to the Alabama action entered an appearance in that state through an attorney. The Alabama final decree, put into evidence at the trial of this case, appears regular on its face and indicates that both parties were represented by counsel.
Under the Full Faith and Credit Clause the attack cannot be made collaterally in a sister state by one of the parties to the decree in the granting state where both parties have appeared. Hudson v. Hudson, 36 N.J. 549 (1961).
While the parties to the Alabama action are estopped to attack the decree collaterally, a stranger to the foreign proceeding is in a different position and can be heard.
The Supreme Court of the United States, in the second case of Williams v. State of North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), permitted the State of North Carolina, in a criminal proceeding against two of its domiciliaries, to attack collaterally two Nevada divorce decrees. The court said:
"But those not parties to a litigation ought not to be foreclosed by the interested actions of others, especially not a state which is concerned *402 with the vindication of its own social policy and has no means, certainly no effective means, to protect that interest against the selfish action of those outside its borders." (325 U.S., at p. 230, 65 S.Ct., at p. 1095)
The holding does not limit this power of collateral attack to states, but rather broadly encompasses "those not parties to a litigation."
In the 1951 Supreme Court case of Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, a collateral attack on a Florida decree was not permitted to be made in the courts of New York by a stranger because the rendering state (Florida) prohibited such an attack. The court said:
"When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them anywhere in the Union. The Full Faith and Credit Clause forbids."
In that same opinion the court said (340 U.S., at p. 589, 71 S.Ct., at p. 479) with reference to the Full Faith and Credit Clause:
"From judicial experience with and interpretation of the clause, there has emerged the succinct conclusion that the Framers intended it to help weld the independent states into a nation by giving judgments within the jurisdiction of the rendering state the same faith and credit in sister states as they have in the state of the original forum." (340 U.S., at p. 584, 71 S.Ct., at p. 476)
In reviewing these decisions of our highest court, it becomes clear that where the rendering state permits a collateral attack by a stranger, the sister state must, under the Full Faith and Credit Clause, also permit same.
In determining whether Joseph Gerard may attack the decree in question, we must look to the law of Alabama. If that state permits a collateral attack by a stranger to the action, we must do likewise. Under Alabama decisional law, collateral attack by a stranger to the proceedings is permitted. The Alabama Supreme Court decision in the 1945 case of Smith v. Smith, 247 Ala. 213, 23 So.2d 605, explicitly held *403 that in a husband's action for annulment, the validity of his wife's divorce from her former husband could be raised collaterally in the pleadings and by argument of plaintiff's counsel. Again, in 1961, that court permitted a collateral attack by a husband against a decree obtained by the wife against her former husband. Aiello v. Aiello, 272 Ala. 505, 133 So.2d 18.
Even though in both the Smith and Aiello cases the decrees under attack were never set aside, the fact still remains that a collateral attack upon the proceedings by a stranger was permitted.
Since Joseph Gerard may collaterally attack his wife's divorce decree in the State of Alabama, under the Full Faith and Credit Clause, he may also do so in the State of New Jersey.
It is the opinion of this court that the Alabama divorce decree procured by Alfred and Paola Cicchetti was fraudulent and therefore void, as a result of which Paola's subsequent marriage to plaintiff is also void and a nullity.
As to plaintiff's demand that defendant return a ring he gave her as an engagement ring, this court finds a paucity of evidence that the ring was so intended. Therefore, this court finds that it was a gift inter vivos and need not be returned.
A pendente lite order for support was entered, and for some reason plaintiff's attorney had (so the plaintiff testified) told him he need not continue paying. An order of the court must be complied with until vacated.
Plaintiff's argument that payment can await the outcome of the suit, since the one so ordered may prevail and thus be freed from the burden to support, is not tenable. If that were so, there would be no need for an ad interim order. Plaintiff will pay all arrearages of the pendente lite order forthwith.
A judgment in conformity with these findings may be presented and counsel will be heard on the application for counsel fees.