JOSEPH C. SKUBAS *v.* SHARON P. SKUBAS

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 147247
AT BRIDGEPORT

Memorandum filed June 25, 1974

*F. Peter Ambrose* and *Trager, Kleban & Trager,* both of Bridgeport, for the plaintiff.

*George R. Bisacca,* of Fairfield, and *Gerald Frauwirth,* of Bridgeport, for the defendant.

BERDON, J. The court has before it a motion filed June 11, 1973, by the plaintiff father to modify the order of custody of the minor child. The plaintiff was granted a divorce on April 13, 1973, on the ground of intolerable cruelty. At that time the court granted custody of the minor child, now age six, to the defendant mother with rights of reasonable visitation for the father. The motion was referred to the family relations officer for custody study, and a report was rendered on November 15, 1973.

Section 15 of Public Act No. 73-373 provides in part: "In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, taking into consideration the causes for dissolution of the marriage or separation and giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference." It has always been our law that the best interests of

the minor child are the determinative consideration in awarding custody. *Murphy* v. *Murphy,* 143 Conn. 600, 603.

The court commenced to hear testimony on the motion and as of this date there has been one chamber session and some testimony taken in open court from the family relations officer.[1] There is no question, from the evidence presented to the court thus far, that the plaintiff and the defendant are concerned parents; they both desire what is best for the child and are concerned for his welfare. Unfortunately, the strong personal feelings in regard to this custody battle have overshadowed the best interests of the child; the court is concerned that the child's interest is not properly being protected.

Authorities on the subject of child placement recognize the importance of a child's being properly represented during any contest over his custody. "In sum, children, far from sharing the

---

[1] It has always been the law of this state in order for a court to consider a motion for modification of custody of a minor child there must be a material change in circumstances. "To limit the use of the power given to the trial courts by . . . [statute] and to give effect to the principle of res judicata, there has developed a rule, which is accepted by this court, that before an order as to custody or support of children may be modified there must have been a material change of circumstances after the order was issued. *Tippin* v. *Tippin,* 148 Conn. 1, 3 . . . ; *Sullivan* v. *Sullivan,* 141 Conn. 235, 239 . . . ; see *Ogles* v. *Warren,* 148 Conn. 255, 258 . . . ; *Freund* v. *Burns,* 131 Conn. 380, 385 . . . ; 24 Am. Jur. 2d 959, Divorce and Separation, § 846." *Cleveland* v. *Cleveland,* 161 Conn. 452, 459–60.

When the state adopted its new law on dissolution of marriage, it included revisions pertaining to custody of minor children. There is no indication that the legislature intended to change the judicial rule requiring a material change of circumstances. In fact, authorities indicate that the best interests of a child dictate that there is a need for finality in a court's order pertaining to custody. "Continuity of relationships, surroundings, and environmental influence are essential for a child's normal development. Since they do not play the same role in later life, their importance is often underrated by the adult world. For *school-age children,* the breaks

adults' concerns, are frequently put in direct conflict with them: their needs may contrast with those of their biological parents, their foster parents, or the social agencies concerned with them. For this reason, once their custody is questioned, their rights cannot be represented adequately by the advocates of either the adult claimant or the adult defendant. They need party status before any court or administrative agency concerned with their fate, namely, to be represented, independently of the adults, as persons in their own right." J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child, p. 67.

The legislature, when it enacted in 1973 the act concerning dissolution of marriage, recognized that such situations may occur. Section 16 of Public Act No. 73-373, as amended by § 9 of Public Act No. 74-169, provides in part: "Such counsel may also be appointed on the motion of the court or on the request of any such person in any case

in their relationships with their psychological parents affect above all those achievements which are based on identification with the parents' demands, prohibitions, and social ideals. Such identifications develop only where attachments are stable and tend to be abandoned by the child if he feels abandoned by the adults in question. Thus, where children are made to wander from one environment to another, they may cease to identify with any set of substitute parents. Resentment toward the adults who have disappointed them in the past makes them adopt the attitude of not caring for anybody; or of making the new parent the scapegoat for the shortcomings of the former one. In any case, multiple placement at these ages puts many children beyond the reach of educational influence, and becomes the direct cause of behavior which the schools experience as disrupting and the courts label as dissocial, delinquent, or even criminal." J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child, p. 33.

Although this court cannot agree with the degree of absoluteness expressed by the authors of the book cited, especially as it may concern rights of visitation, it is the court's opinion that stability is necessary for the proper development of a child. Therefore, it must be shown that there has been a material change of circumstances, before the court considers a motion to modify its prior order as to the custody of a minor child.

before said court when the court finds that the custody, care, education, visitation or support of a minor child or children is in actual controversy, provided the court shall not be precluded from making any order relative to a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any such child. Any such counsel shall be heard upon all matters pertaining to the custody, care, support, education and visitation of the child or children so long as the court deems such representation to be in the best interests of the child or children."[2]

The court is of the opinion that in order to protect the minor child in this matter, he should have independent counsel. It is, therefore, ordered: (1) Pursuant to Public Act No. 73-373, as amended by Public Act No. 74-169, the court hereby appoints Arthur Gerstel as counsel for the minor child. (2) The family relations officer is directed to update his report as it pertains to the custody and visitation of the minor child. (3) The best interests of the child indicate that pending the further report of the family relations officer and a further hearing on the motion for custody, the visitation rights of the plaintiff should be modified to the extent that the plaintiff shall return the child to the defendant at 6 p.m. on Sundays instead of 8 p.m.

---

[2] By § 46 of Public Act No. 73-373, the act applies to "motions for modification of, any alimony, support or custody order entered pursuant to a decree of divorce, legal separation or annulment rendered prior to" the effective date of the act.