ANNE MURPHY *v.* CHARLES GORDON MURPHY

SUPERIOR COURT      FAIRFIELD COUNTY      FILE NO. 032898
AT STAMFORD

Memorandum filed January 4, 1978

*Schine, Julianelle, Karp & Bozelko,* for the plaintiff.

*Fain, Konover, Fraulo, Forstadt & Grushkin,* special appearance for the defendant.

JAMES F. STAPLETON, J. This is an action for dissolution of marriage. The defendant, the plaintiff's third husband, has filed a plea in abatement on the grounds that the plaintiff's divorce from her second husband was void as it was rendered in Haiti at a time when both parties to that decree were residents of, and domiciled in, Connecticut. Therefore, the defendant argues that the Haitian court had no jurisdiction. The plaintiff has filed a demurrer to the plea in abatement in which she raises several issues which will be discussed individually.

## I

The first ground of demurrer is that the plea in abatement fails to pray for judgment. In fact, the plea does fail to pray for judgment. Rather, it ends with an order of the court. There are three Connecticut Supreme Court cases and one Superior Court case which clearly state that a plea in abatement which does not pray for judgment is demurrable. *Wooley* v. *Williams,* 105 Conn. 671, 675; *Mitchell* v. *Smith,* 74 Conn. 125, 127; *Coughlin* v. *McElroy,* 72 Conn. 444, 448; *Hazel Cole's Appeal from Probate,* 18 Conn. Sup. 154, 155.

The defendant argues, however, that the saving clause of General Statutes § 52-123 remedies the defect in the plea. While the statute does state that "[n]o . . . pleading . . . shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court," the defendant's argument is entitled to little weight since a similar version of the statute was in effect at the time of the previously cited decisions. In fact, the cases which the defendant has cited as holding that the saving clause is applicable to pleas in abatement; *Draper* v. *Moriarty,* 45 Conn. 476 and *Wilcox* v. *Chambers,* 34 Conn. 179; were both decided prior to the decisions which held that a plea in abatement is demurrable if it lacks a prayer for judgment. That particular type of defect, therefore, is not remedied by the saving clause, and the demurrer is sustained on this ground.

The court, however, will also consider the other grounds raised by the demurrer.

## II

The plaintiff claims that the issue of the existence of a valid prior marriage is more properly pleaded as a special defense than as a plea in abatement.

While there are no Connecticut cases precisely on point, several Superior Court cases do shed light on the issue. In *Guglielmino* v. *Guglielmino*, 16 Conn. Sup. 442, the defendant filed a plea to the jurisdiction on the grounds that neither party had ever been a resident of the state of Connecticut, contrary to the allegations in the complaint. The court overruled the plea to the jurisdiction without prejudice to the defendant's right to plead its subject matter in bar. The basis of the *Guglielmino* court's decision was the predecessor of General Statutes § 52-124 which states: "Upon the trial of any issue of fact joined upon a plea in abatement in a civil action, the verdict or finding of the court shall not preclude the parties from contesting the cause upon its merits; and, if in favor of the plaintiff, the defendant may answer over to the action or plead any legal plea which he deems necessary for his defense." In light of the statute the court held that the plaintiff should not be precluded from contesting the cause on the merits. The *Guglielmino* decision was followed on similar facts in *Schreiber* v. *Schreiber*, 27 Conn. Sup. 121.

The defendant attempts to distinguish those cases from the present one on the grounds that they dealt with in personam jurisdiction while the issue at bar is one of subject matter jurisdiction. The attempted distinction cannot withstand scrutiny. In the first place the *Guglielmino* and *Schreiber* cases did not deal with in personam jurisdiction since a dissolution of marriage is not an in personam but rather an in rem action. *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 545; *Vogel* v. *Sylvester*, 148 Conn. 666, 670. Further, the present case does not raise an issue of subject matter jurisdiction. Subject matter jurisdiction is merely the statutory authority to hear cases of the general class to which this case belongs. 24 Am. Jur. 2d, Divorce and Separation, § 240. It

is clear that the Superior Court has subject matter jurisdiction of this action. General Statutes § 46-33. Whether the court is concerned with the domicils and residency requirements of the parties or the existence of a valid marriage, the issue is still one of jurisdiction over the marriage res. Thus to this extent *Guglielmino, Schreiber* and the case at bar are indistinguishable; all deal with the same genre of jurisdictional issue. And the first two cases held that the jurisdictional issue should not be the subject of a plea in abatement.

Furthermore, an argument could be made that even if the jurisdictional question were determined at this point, it should be determined in favor of the plaintiff so long as there is a colorable marriage res or status to which jurisdiction might attach. This would be especially pertinent if the court were later to decide that the marriage is not open to collateral attack by this defendant. In this regard it is clear that even if the defendant can collaterally attack the Haitian divorce some parties may be prohibited from attacking it. *Tippin* v. *Tippin,* 148 Conn. 1, 6. Thus, to some extent there is an existing status or res to which jurisdiction can attach.

Therefore, in accordance with the *Guglielmino* and *Schreiber* cases the demurrer to the plea is sustained on this ground. The issue should be pleaded in bar and not in abatement, and it should be decided in a trial on the merits.

In this connection it should also be pointed out that issues of estoppel might be raised against the defendant in a hearing on the merits and further that the defendant has not even alleged in his plea that the plaintiff's second husband was alive and still married to the plaintiff at the time of the present marriage. The plea is fatally defective and subject to demurrer on this ground alone.

### III

The plaintiff further claims in her demurrer that the defendant cannot make a collateral attack on an earlier judgment to which he was a stranger. The question then arises as to what law applies.

The defendant claims that New York law ought to govern the issue of whether the defendant can collaterally attack the plaintiff's Haitian divorce. While the state of the marriage determines its validity; *Davis* v. *Davis,* 119 Conn. 194, 198; that is not the issue before the court. The first issue is not whether the marriage is void, but rather, whether it can be collaterally attacked. The defendant, to support his proposition, quotes *Gerard* v. *Distefano,* 84 N.J. Super. 396, 402, which states: "In reviewing these decisions of our highest court, it becomes clear that where the rendering state [the state which rendered the divorce] permits a collateral attack by a stranger, the sister state must, under the Full Faith and Credit Clause, also permit the same." Thus, under the *Gerard* decision the determination as to whether a divorce proceeding may be collaterally attacked is governed by the law of the state which rendered the divorce. The *Gerard* case, however, as well as the cases it cites; *Johnson* v. *Muelberger,* 340 U.S. 581; and *Williams* v. *North Carolina,* 325 U.S. 226; are inapplicable since those cases turn on the obligations of one state to another under the full faith and credit clause. Since, here the court is dealing with a Haitian divorce, the more flexible principle of comity applies. *Litvaitis* v. *Litvaitis,* 162 Conn. 540, 544. In this situation, while the conflicts issue is not discussed, the trend is for the forum state to use its own law in determining whether the divorcing country had acquired the requisite jurisdiction. Annot., 13 A.L.R.3d 1419. Thus, in *Litvaitis,* supra, Connecticut applied its own law in allowing a collateral attack on a Mexican

divorce by an alleged party to it. The same rule should be applied here. The law of the forum, Connecticut, should be applied in determining whether a collateral attack should be allowed.

In a very similar case, the Superior Court decided that the second spouse could not attack the validity of a prior divorce between his wife and her former husband. *Cocco* v. *Cocco*, 23 Conn. Sup. 275. *Cocco* is essentially on "all fours" with the case at bar and the defendant's attempts to distinguish it are futile. Nonetheless, because it is not a Supreme Court case, the defendant urges that this court follow another path.

Initially, it is sufficient to note that the courts in other jurisdictions are split regarding the ability of a second spouse to attack collaterally a prior divorce of his present spouse. Annot., 12 A.L.R.2d 717. Thus, the court should be concerned primarily with the course followed by Connecticut cases, since cases of other jurisdictions point in several directions.

The *Cocco* case relies heavily on *Tippin* v. *Tippin*, 148 Conn. 1, which is clearly distinguishable from the present case. In *Tippin*, A and B were divorced, and subsequently B married C, who had previously obtained an Alabama divorce from her husband D. A tried to attack the divorce between C and D. The court ruled that, as a stranger to the divorce, A had no standing to attack it. The language on which the *Cocco* court relied was as follows: "Since the plaintiff here was not a party to the Alabama divorce proceedings, she is a stranger making a collateral attack on the decree. To have any standing to make such an attack, she would have to prove, at the outset and as a first issue, that she had a legally protected interest adversely affected by the decree. . . . Otherwise, she would have no standing

to call in question the validity of the Alabama divorce, to which she was a stranger." *Tippin* v. *Tippin,* supra, 6.

While it is clear that the holding in *Tippin* did not mandate the decision in *Cocco,* it cannot be said that *Cocco* is an illogical aberration. The *Cocco* court noted that at the time of the divorce the plaintiff had no legally protected interest. She claimed standing only by virtue of her subsequent marriage. The court stated that the decree, rather than adversely affecting the plaintiff's marriage, made it possible. Any adverse effects upon her marriage interests would follow not from the decree itself, but from her own attack upon its validity.

Under these circumstances a collateral attack was not permitted in *Cocco* and will not be permitted here. See *Tyler* v. *Aspinwall,* 73 Conn. 493.

The demurrer to the plea is sustained on all grounds.