852 So.2d 402 (2003)
Lucilia LOPES, Appellant,
v.
Luciano LOPES, Appellee.
No. 5D02-793.
District Court of Appeal of Florida, Fifth District.
August 22, 2003.
John Dwyer Meehan, Orlando, for Appellant.
Gary Shader, of Law Office of Gary Shader, Maitland, for Appellee.
HARRIS, Senior Judge.
Lucilia Lopes sued for divorce after what she assumed was a fifteen-year marriage. The trial judge, however, based on appellee's affirmative defense and counterclaim, found that the marriage was void because the appellant had a legal husband at the time of the purported marriage. The court annulled the marriage. It was appellee's position that appellant's first marriage, which he contends he learned of only two to three years before the divorce *403 was filed, was not properly terminated by the purported Dominican Republic divorce because the parties to the divorce were not residents there at the time of the divorce. The first husband was in the Dominican Republic for less than three hours and the appellant apparently appeared there only by power of attorney.
At trial (and on appeal), appellant all but conceded the invalidity of the Dominican divorce. Instead of relying on the validity of the divorce and her subsequent remarriage in Connecticut (the marriage herein annulled), she urged that it would be inequitable to annul the marriage in which the parties obtained a marriage license, went through a marriage ceremony, lived together as man and wife, bought property together, shared various bank accounts, and held themselves out as man and wife. In other words, she urged the court to find an equitable common law marriage. But common law marriages, even equitable ones, are not recognized in Florida. The issues belong to the parties; the facts to the trial court. The trial court, based on the pleadings and evidence before it, determined that the Dominican divorce was void under Florida lawthe only law urged by the parties. The issues raised by the dissent, based on the dissent's independent research, simply were not raised by Appellant either below or before this court. It is now too little, too late.
A better issue for appellant, had it been pleaded, would have been that since Connecticut does not permit a husband to challenge the validity of a divorce to which he was not a party, the Connecticut marriage was effectively valid and thus entitled to full faith and credit. But the wife did not urge that the marriage was valid in Connecticut and she did not plead or establish the law of Connecticut. Further, and of equal importance, the wife did not urge the validity of the Dominican divorce and she did not plead or establish the law of the Dominican Republic. The effect of all this is that it is presumed that the law of Connecticut and the law of the Dominican Republic are the same as the law of Florida. See Columbian Nat. Life Ins. Co. v. Lanigan, 154 Fla. 760, 19 So.2d 67 (1944).
With this presumption, the position the trial court found itself in was that there was a jurisdictional requirement in the Dominican Republic for a valid divorce which was not met. Further, without a showing that the marriage was valid in Connecticut or that Connecticut would not permit a second husband to challenge even a void divorce, our court was free to decide the issue under Florida law.
The law of Florida is that a marriage is not valid if one of the parties has a legal spouse at the time of the marriage. See Jones v. Jones, 119 Fla. 824, 161 So. 836 (1935) (The marriage of a man and woman, where one of them has a husband or wife by a prior marriage, who is then living and undivorced, is generally held to be absolutely void, and not merely voidable, and, being a nullity, no judicial decree is necessary to avoid same.) Even though it may not be necessary to get a judicial determination that no marriage exists, our supreme court has said that it is in the best interest of society to do so and that it matters not whether the determination is made by annulment or divorce, the effect is an adjudication of the nullity of the supposed marriage. Burger v. Burger, 166 So.2d 433 (Fla.1964).
Logically, it would not seem to matter why a previous marriage was still intact whether the parties' attempted divorce was invalid or whether the parties never attempted a divorce at all. In either event, one continues to have a living and undivorced spouse which prevents such person from entering a new, valid marriage.
*404 It was not suggested below that the husband lacked standing to challenge the validity of the Dominican divorce because he was not a party to it. This may be the (unpleaded) Connecticut law but it is not now the law of Florida. Indeed, it would be peculiar if one seeking an annulment based on the ground that his or her spouse was married at the time of the second marriage, thus rendering the second marriage absolutely void, could not assert the invalidity of a purported divorce. Otherwise, the State through its courts would be breathing life into a nonexistent entity. If the Dominican divorce was void, it was not void only as to the parties to it; it was nonexistent as to the world. In any event, appellee was not challenging the validity of the Dominican divorce, at least not directly. He was challenging the validity of his marriage, a marriage to which he was a party, and merely relied on the fact that appellant's divorce was void as evidence to support his position. Whether the husband could have challenged the Dominican divorce in Connecticut is immaterial. Here, the wife chose Florida as the forum for her action.
In any event, since 1851, the right of third persons to challenge the validity of a marriage has been recognized in Florida. The court in Ponder v. Graham, 4 Fla. 23, 27 (Fla.1851), stated:
But where any civil disability, as prior marriage, exists, the marriage is void absolutely, and no civil rights can be acquired under it; and it may be inquired of in any court where rights are asserted under it, though the parties be dead.
Where any civil disability exists, the judgment of the court is but declaratory; it does not make it void; for though a marriage de facto, it had no legal existence. It is competent for a party to set up the nullity of his first marriage, in bar of a sentence praying the nullity of the second marriage. Shelford, 332. Either of the parties to the marriage, or the parent or guardian of either of the parties, or any other person interested, may apply to the court, and they have a right to a declaratory sentence, and it is upon the ground that the public, as well as the parties in interest, have a right to know the real character of these domestic relations. Shelford, 334. It is, therefore, upon principle and authority, competent for executor, representing as he does the interest of distributees and creditors of this estate, to impeach the validity of this marriage.
The same logic applies now.
Even if appellee's standing to challenge the Dominican divorce could have been asserted by appellant, as previously mentioned it was not. Although estoppel was urged by the wife as a basis for ignoring the invalidity of the marriage, it was based only on her position that appellee knew of the divorce prior to their marriage and relied on them in entering the marriage, a position contrary to the husband's testimony. The judge was free to believe the husband's testimony. The court rightly rejected this claim of estoppel.
Based on the record and the pleadings and proof before the trial court, we affirm.
ORFINGER, J., concurs.
GRIFFIN, J., dissents with opinion.
GRIFFIN, J., dissenting.
I respectfully dissent.
The appellant, Lucilia Lopes ["Lucilia"], was previously married to Mario Coelho. In 1972, her former husband obtained a divorce from her in the Dominican Republic, at a time when both Lucilia and her former husband (who are Portugese) were living in Connecticut. The divorce was *405 obtained on grounds of "mutual consent." Coelho testified he traveled to the Dominican Republic specifically for the purpose of obtaining a divorce and was there for less than one day. Lucilia apparently appeared in the proceeding through counsel and consented to the divorce.
Lucilia married the appellee herein, Luciano Lopes ["Luciano"], in 1985. They lived together as husband and wife for approximately fifteen years, until November 2000, when Lucilia filed for divorce. Lucilia sought alimony, an equitable distribution of marital property, and attorney's fees. In "Husband's Response to Wife's Petition for Dissolution of Marriage and Other Relief and Husband's Counterpetition for Dissolution of Marriage," Luciano sought alimony, equitable distribution, payment of his health insurance premiums, and attorney's fees. Six months later he filed an amended petition seeking a special equity in the marital home and in a bank account. One month later, in July 2001, he filed a second amendment, in which he raised for the first time that his marriage to Lucilia was "not legal" because Lucilia's Dominican divorce from her first husband was not valid. He contended that Lucilia was still married to Coelho at the time of their marriage, which rendered the marriage void ab initio. He separately asked the court for a declaratory judgment regarding the validity of his marriage to Lucilia and requested the partition of property held as tenants by the entireties.
Following an evidentiary hearing, the trial court granted Luciano an annulment on the basis that Florida would not give comity to a divorce obtained in the Dominican Republic, where neither Lucilia nor her former husband were residents of that country for a period of 180 days, as required by Florida law, before the divorce was issued. The trial court further refused to find that husband was estopped to contest the validity of his marriage to Lucilia, because "a party who obtains an inappropriate and invalid divorce cannot avail itself with the use of estoppel." The final order found the marriage between Lucilia and Luciano was "void ab initio" and freed each party from the "obligations of this marriage."
I would reverse this decision. Lucilia argues on appeal that her marriage to Luciano was presumptively valid and that Luciano failed to prove that it was not. She also urges that Luciano is estopped to attack the legality of her marriage to him. Among other things, the majority improperly relieves Luciano of the burden of proving the claim in his petition that she remained married to Coelho and could not, therefore, ever have been his wife. It was enough for the trial court and for the majority that Lucilia conceded that she had not met the residency requirements under Florida law when she was divorced in the Dominican Republic. For the majority to say Lucilia failed to argue that her first divorce was valid is both cruel and inaccurate. She can be forgiven for conceding that her Dominican divorce would not be given full faith and credit if it had been litigated in Florida because such a concession should not matter to the question whether Luciano and she were legally married.
Recognition of divorce decrees rendered in foreign courts is a matter of comity involving an exercise of discretion. See Pawley v. Pawley, 46 So.2d 464 (Fla.1950); Popper v. Popper, 595 So.2d 100 (Fla. 5th DCA), review denied, 602 So.2d 942 (Fla. 1992). This court has held that in order to be entitled to comity, the record must show the foreign judgment partook of the elements which would support it if it had been obtained in this state. This means that "the grounds relied upon for divorce must be sufficient under Florida law, the *406 petitioning party must satisfy the jurisdictional requirements relating to residency or domicile, and basic due process and notice requirements must be met." Popper, 595 So.2d at 103.
Coelho was not a resident of the Dominican Republic for a period of six months before applying for the divorce, which is the residency requirement imposed by Florida law to obtain a divorce. § 61.021, Fla. Stat. (1999). Florida courts have determined that lack of residency in the Dominican Republic equates with a lack of subject-matter jurisdiction. See, e.g., Orbe v. Orbe, 651 So.2d 1295 (Fla. 5th DCA 1995). Accordingly, even though Lucilia's divorce from Coelho was apparently valid in the Dominican Republic, which has no residency requirements and which has, since 1971, recognized divorces for non-resident foreigners based on "mutual consent," [1] Florida refuses to recognize such a divorce.
However, it is one thing for Florida courts to refuse to recognize an ex parte divorce obtained by one of two Florida residents in a foreign country when suit is brought by the non-participating spouse.[2] It is quite another to allow a third party to challenge the validity of those proceedings, particularly when they could not have been challenged in the state in which Lucilia and her first husband were living when Lucilia's first divorce was obtained. To say that if Coelho and Lucilia had been Floridians and if, at the time of their "divorce," one of them had attacked the Dominican divorce, Florida's courts would not have recognized its validity proves nothing relevant to the issues in this case. They were, in fact, living in Connecticut and they are not the ones seeking to invalidate the divorce.
The issue of standing to attack the decree would appear to be governed by the marital domicile of the divorcing parties when the divorce was rendered, which in this case was Connecticut. Importantly, Connecticut law gives Luciano no right to assert the invalidity of Lucilia's divorce from Coelho, because in that state "[a second spouse] has no standing to attack collaterally an earlier divorce decree to which he was a stranger and in which he had no legally protected interest which would have been affected by the decree itself at the time it was rendered." Fattibene v. Fattibene, 183 Conn. 433, 441 A.2d 3, 4 (1981) (husband had no right to attack validity of wife's prior divorce, which had been obtained in the District of Columbia, in proceeding for dissolution of marriage); Cocco v. Cocco, 23 Conn.Supp. 275, 181 A.2d 266 (1962) (plaintiff, who was not party to Mexican divorce proceedings brought by defendant against his former wife, could not collaterally attack validity of Mexican divorce decree when plaintiff, who had knowledge thereof before marriage, did not show that she had a legally protected interest which was adversely affected by the decree, but even if plaintiff *407 had standing to attack such decree, evidence was insufficient to establish invalidity of decree); Murphy v. Murphy, 34 Conn.Supp. 251, 386 A.2d 274 (1978) (husband could not collaterally attack wife's prior Haitian divorce in later divorce proceeding); see also Tyler v. Aspinwall, 73 Conn. 493, 47 A. 755 (1901) (strangers to potentially invalid divorce wrongfully obtained in Connecticut without residency have no such interest therein as will permit their maintaining suit to set it aside merely because they would inherit interest in husband's estate if marriage was set aside). Moreover, standing is a threshold issue which must be addressed before the marriage can be declared void. Fattibene, supra.
If a direct or collateral attack on the decree would not be permitted in Connecticut, it makes no sense to permit a stranger to the marriage to mount a collateral attack on the validity of the decree in this state. Lucilia and Coelho are indisputably divorced. Even Florida law recognizes that third parties have no standing to attack the validity of a divorce between two other individuals. deMarigny v. deMarigny, 43 So.2d 442 (Fla.1949) (refusing to let second wife attack validity of divorce previously obtained in Florida by husband and husband's first wife, although second wife alleged Florida lacked jurisdiction because it was not true domicile). In deMarigny, the court emphasized that the former divorce decree (which had been obtained in Florida, but the court was allegedly without jurisdiction as it was not the domicile or residence of either party to the decree) had not adversely affected the status or rights of the second wife existing at the time of entry of the decree. Instead, the court felt the decree had protected her, for it made the second marriage to her possible. The court thus held that the second wife had no standing to institute an independent action attacking the divorce, even though suit had been brought in the state which granted the divorce. In short, no one but the parties to the divorce (and possibly their successors in interest) have the right to complain about the validity of the proceedings which resulted in the divorce.
I also find it significant in this case that Lucilia was not a victim of some scheme by her first husband; rather, she voluntarily appeared in the proceedings in the Dominican Republic by virtue of a power of attorney. Even though a judgment obtained without proper jurisdiction is generally held to be void, such judgments are nevertheless usually given full faith and credit in later actions brought by one of the spouses who willingly participated in the divorce action. Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); Coe v. Coe, 334 U.S. 378, 68 S.Ct. 1094, 92 L.Ed. 1451 (1948). Bilateral divorces must also be given full faith and credit in actions involving third parties, who are not allowed to relitigate the validity of another's divorce where both of the divorcing parties appeared before the foreign tribunal. See also Johnson v. Muelberger, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552 (1951)(where decedent appeared in Florida divorce action by wife, and both parties had full opportunity to contest jurisdictional issues in that court, under Florida law, decedent's daughter and sole legatee under his will, could not attack Florida divorce decree as beyond the jurisdiction of the rendering court, and therefore the New York courts could not permit such an attack by daughter for purpose of defeating third wife's widow rights in decedent's estate); Cook v. Cook, 342 U.S. 126, 72 S.Ct. 157, 96 L.Ed. 146 (1951)(holding that Vermont court could not consider validity of wife's Florida divorce, obtained while she and second husband were actually residents of Virginia, in action for annulment brought by second husband, to extent that husband appeared in Florida proceedings and admitted domicile). New *408 York appears expressly to recognize bilateral foreign judgments of divorce, without domicile or residency, and does not consider it to be against the public policy of the state to afford them comity. See Rosenstiel v. Rosenstiel, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709 (1965) (separation agreement incorporated in valid judgment of divorce obtained in Dominican Republic by New York residents would be recognized on basis of comity, and was not against public policy of state); R.F. Chase, Annotation, Domestic Recognition of Divorce Decree Obtained in Foreign Country and Attacked for Lack of Domicil or Jurisdiction of Parties, 13 A.L.R.3d 1419 (1967); see also Perrin v. Perrin, 408 F.2d 107 (3d Cir.1969) (holding that Virgin Islands would recognize bilateral foreign divorce obtained in Mexico). Since Lucilia and Coelho are clearly divorced, the question appears to be whether Florida courts can pretend that they are not divorced (and that she was never married to Luciano) because Florida would not enforce such a divorce over the objection of either Lucilia or Coelho if they had been Floridians. The majority says the answer is "yes." I believe the answer is "no."
The same result is obtained in most jurisdictions, including this one, on grounds of estoppelthat is, most courts hold that those who are parties to the divorce are estopped from later questioning the validity of the decree. In most cases, estoppel is applied against those who were parties to the original divorce to prevent them from claiming a second marriage is invalid, using either a fault analysis or emphasizing that they had remarried in reliance on the earlier decrees. See, e.g., Reichert v. Appel, 74 So.2d 674 (Fla.1954) (husband was estopped from attacking jurisdiction of Illinois court which had rendered divorce decree husband was seeking to avoid because he had remarried in reliance on decree); Lambert v. Lambert, 524 So.2d 686 (Fla. 4th DCA 1988) (even if husband's Dominican Republic divorce from his first wife was invalid, he was estopped from subsequently challenging its validity in action for divorce brought by husband's second wife); see also Bemis v. Loftin, 127 Fla. 515, 173 So. 683 (1937) (wife who falsely acknowledged former's husband's residence and domicile in Florida to obtain annulment estopped from later challenging validity of annulment); Kindle v. Kindle, 629 So.2d 176 (Fla. 5th DCA 1993) (putative wife of twenty year marriage was entitled to permanent alimony following annulment where putative wife was not aware that husband was already married at the time of their purported marriage). However, estoppel has also been applied against a non-party to the divorce who married in reliance on the decree. Lambertini v. Lambertini, 655 So.2d 142 (Fla. 3d DCA 1995).
In Lambertini, the wife had obtained a divorce from her first husband in Mexico after seeking out an attorney with the help of her second husband. She then married her second husband in Mexico. The parties later moved to Florida, where wife sought a divorce from her second husband. Husband counterpetitioned, claiming that the Mexican divorce and remarriage were void. The trial court found that husband was estopped from challenging the parties' marital status, explaining:
The presumption of a marriage's existence grows out of long and continuous cohabitation, the establishment and maintenance of a home and family, and recognition by the public generally and their friends and associates that the man and woman are husband and wife. In re Estate of Marden, 355 So.2d 121 (Fla. 3d DCA), cert. denied, 361 So.2d 833 (Fla. 1978). The strength of that presumption increases with the passage of time during which the parties are cohabiting as husband and wife. Id.; see also 25 Fla.Jur.2d Family Law § 46 (1992). The presumption of validity of the marriage *409 in the instant case is a strong one, regardless of the dispute whether the Mexican marriage was void ab initio. The parties cohabited and held themselves out to family, friends, and to the public as married for approximately thirty years, bore and raised two children within this time, and held property as tenants by entirety. At final hearing, the husband testified that he had honestly believed and reasonably relied on the validity of the marriage to the wife for some thirty years. There was no allegation by either party that the marriage was void until the wife made her claim for alimony in the dissolution proceedings. For these reasons the husband was equitably estopped from raising the validity of the marriage, and annulment was improper. See McMichael v. McMichael, 158 Fla. 413, 28 So.2d 692 (1947); Keller v. Keller, 521 So.2d 273 (Fla. 5th DCA 1988); Seoane v. Seoane, 514 So.2d 430 (Fla. 3d DCA 1987); Arnold v. Arnold, 500 So.2d 739 (Fla. 3d DCA 1987).
Id. at 143. The court made clear that it was not relying on the "fault" of either party in its ruling. It explained that where both parties thought the divorce was valid and neither had reason to believe otherwise, "fault" was not at issue:
Each party also claims that the other was the active procurer of the invalid Mexican marriage. However, there is no evidentiary support in the record for the argument that one of the parties is innocent while the other is necessarily culpable. Apparently, by focusing on the claimed invalidity of the Mexican divorce and marriage, the trial court misapprehended that both parties may have been duped by the unprofessional misrepresentations of the Buenos Aires attorney who procured the putative marriage certification. There is no record evidence of any fraudulent conduct by either of the parties. Both parties participated in procuring the so-called divorce and marriage from the Argentine attorney, and there is nothing in the evidence to indicate that either party had reason to believe that the Mexican divorce and marriage were not valid.
Id. at 143-144.
In this case, the parties cohabited and held themselves out to others as husband and wife for a period of fifteen years. According to Luciano, he did not marry in reliance on the divorce decree, since he testified that he did not learn about the divorce until three years prior to the hearing.[3] However, upon learning of the divorce, he apparently remained married in reliance on the decree. Both parties testified they believed the divorce to be valid until the issue was raised in these proceedings. Lucilia not only remarried in reliance on the decree, but her ex-husband remarried in reliance on the decree and had two children with his second wife. There simply is no logic or reason under these circumstances to allow Lucilia's second husband to attack the validity of Lucilia's *410 first divorce as a means of seeking to avoid payment of alimony and an equitable distribution of the parties' property. See Rosen v. Sitner, 274 Pa.Super. 445, 418 A.2d 490 (1980). Precluding Luciano from attacking the decree also appears consistent with section 74 of the Restatement (Second) Conflict of Laws, which sets forth the following guidelines concerning estoppel in matrimonial actions:
A person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so.
The comments to the rule explain:
The rule is not limited to situations of what might be termed "true estoppel" where one party induces another to rely to his damage upon certain representations as to the facts of the case. The rule may be applied whenever, under all the circumstances, it would be inequitable to permit a particular person to challenge the validity of a divorce decree. Such inequity may exist when action has been taken in reliance on the divorce or expectations are based on it or when the attack on the divorce is inconsistent with the earlier conduct of the attacking party.
I would hold that Luciano has no standing to make a collateral attack on the validity of Lucilia's original divorce in order to avoid alimony or equitable distribution after fifteen years of marriage.[4] I would also hold he has failed to prove she is not divorced from her first husband. In the alternative, Luciano should be estopped to attack the validity of the decree. I would reverse.
NOTES
[1] Dominican law requires at least one spouse to be present and requires a non-attending spouse to execute a power of attorney submitting to the jurisdiction of the Dominican court. These requirements were apparently met in this case. The divorce decree, which recites that it was obtained on grounds of mutual consent, appears valid on its face and Coelho confirmed that he was present in the Dominican Republic. It must be assumed that Lucilia, who testified that she signed a paper in connection with the divorce, also submitted to the jurisdiction of the Dominican court by executing a power of attorney.
[2] See, e.g., Kittel v. Kittel, 194 So.2d 640 (Fla. 3d DCA 1967) (finding no abuse of discretion in trial court's refusal to recognize "quickie divorce" obtained by the husband in Mexico, where the parties had always lived in Florida, and the divorce was obtained on grounds (incompatibility) not recognized in Florida).
[3] Although it is not our job to determine, the credibility of Luciano's testimony on this issue seems dubious. The parties socialized with other members of a close-knit Portugese community in both Connecticut and Florida. Several witnesses testified that members of the Portugese community had known about Lucilia's divorce for many years. Even Luciano's cousin testified that he knew of Lucilia's divorce and of the remarriage of Lucilia's former husband shortly thereafter. One witness even testified that she heard Luciano refer to Lucilia's divorce during an argument seven years previously. The trial court did not reach the credibility issue on this point because the trial court ruled that estoppel could not be asserted by Lucilia because "a party who obtains an inappropriate and invalid divorce cannot avail itself with the use of estoppel." This statement of law is plainly wrong.
[4] There was no evidence offered by Luciano either that Lucilia's divorce was invalid under the law of the Dominican Republic or invalid under the law of the state where all these parties resided both when the divorce was obtained and when the former Mr. and Mrs. Coelho entered into their new marriages. His only claim was and is that the marriage is void because a Florida court will not give comity to the Coelho's divorce. The (faulty) premise of the majority opinion is that Lucilia's divorce from Coelho was void and she, therefore, remained married to him, making it impossible for her to have a marital relationship with Luciano. The fact that Florida would not give comity to the Dominican divorce because Mr. and Mrs. Coelho did not meet Florida's residency requirements does not, however, mean that Lucilia is still married to Coelho. Indeed, she is not. She married Luciano in Connecticut and, under Connecticut law, he could not have invalidated the marriage there. Coelho has himself remarried and has children by his second wife. The Coelhos' divorce was not only valid under the laws of the place where it was obtained, it would have been granted recognition in the state of the parties' domicile. The failure of Florida to recognize such a divorce is simply a matter of public policy. To say that she became a bigamist the day she crossed the Florida state line makes no sense. Luciano cannot obtain a decree in a Florida court declaring Lucilia's divorce void just because it didn't meet the residence requirements required for a Florida divorce. Florida should follow the law of Connecticut and not allow Luciano to set up Florida's refusal to recignize a Dominican divorce to obtain a declaration that Lucilia's divorce from Coelho was void.