## LENOIR *v.* LENOIR.[*]

---

MARRIAGE, ANNULMENT OF; FRAUD; CONDEMNATION; EVIDENCE; WIT-
NESSES.

1. When a woman about to enter upon the matrimonial relation conceals from her prospective husband the fact that she is pregnant at the time

---

[*]*Marriage—Annulment.*—As to effect of antenuptial pregnancy or unchastity as a ground for divorce, or annulment of marriage, see also the full presentation of authorities in editorial note to *Franke* v. *Franke,* 18 L. R. A. 375.

by another man, the concealment is such a fraud as to justify the annulment of the marriage; but the husband will not be entitled to a decree of annulment on the ground of such fraud, if, after its discovery by him, he has condoned it by continuing to cohabit with his wife.

2. Section 1068, D. C. Code, which provides that in civil and criminal proceedings husband and wife shall be competent, but not compellable, to testify for or against each other, must be taken as qualified by § 964, D. C. Code, providing a special rule of evidence in divorce cases.

3. The purpose of § 964, D. C. Code, providing that no decree of divorce, or of annulment of marriage, shall be rendered on default without proof, and that no admission contained in the answer of the defendant shall be taken as proof of the facts charged as the ground of the application, but the same shall in all cases be proved by other evidence, is to prohibit divorce or annulment of marriage upon the mere statement of one of the parties without corroborative evidence; so that a decree of annulment in a case where the two questions are as to whether the complainant is the father of the defendant's child, and, if not, whether he condoned the fraud on him by continuing cohabitation after its discovery by him, cannot be granted on the uncorroborated testimony of the complainant.

4. In a divorce case which was not contested by the defendant in the court below, but in which that court assigned an attorney to appear for the defendant and defend the cause under § 982, D. C. Code, this court, on an appeal by the complainant from a decree dismissing the bill, *denied* a motion by the attorney so assigned to defend for leave to file a typewritten brief in this court on behalf of the appellee.

No. 1426.   Submitted June 27, 1904.   Decided June 28, 1904.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing the petition in a suit to annul a marriage on the ground of fraud.

*Affirmed.*

(Before the hearing on the merits *Mr. Kenyon,* who had been appointed by the court below under § 982, D. C. Code, to enter an appearance for the defendant and actively defend the cause, moved in this court for leave to file a typewritten brief, on the ground that the defendant below and appellee here refused to contest the case and there was no money available to pay for printing the brief. This motion was denied by the Court, and the appeal was heard with no brief having been filed on behalf of the appellee.)

The facts are sufficiently stated in the opinion.

*Mr. Smith Thompson, Jr.,* and *Mr. Andrew Y. Bradley* for the appellant.

*Mr. J. Miller Kenyon* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit for the annulment of a marriage on the ground of fraud, which alleged fraud consisted in the concealment from Charles E. Lenoir, the appellant, the complainant, or petitioner in the court below, of the fact that the appellee, Laura E. Lenoir, at the time of the marriage was pregnant with child by a person other than the appellant. The relief prayed for was denied by the supreme court of the District of Columbia, wherein the suit was instituted, on the ground that, although the fraud was sufficiently proved, yet the petitioner had condoned the offense and had continued to cohabit with the appellee after the discovery of the fact. The petitioner has appealed to this court from the decree dismissing his, petition.

It is conceded that fraud in its procurement will vitiate the contract upon which marriage is based as well as any other contract, and will justify its annulment by the courts. *Ridgely* v. *Ridgely,* 79 Md. 298, 25 L. R. A. 800, 29 Atl. 597; *Le Brun* v. *Le Brun,* 55 Md. 496; *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456; *Carris* v. *Carris,* 24 N. J. Eq. 516; *Clark* v. *Field,* 13 Vt. 460; *True* v. *Ranney,* 21 N. H. 52, 53 Am. Dec. 164; *Tefft* v. *Tefft,* 35 Ind. 44. Sections 966 and 1285 of the Code remove all doubt upon the subject, if any ever existed, for they provide in express terms that marriage contracts may be decreed to be void when they have been procured through coercion or fraud. But there is a radical divergence of opinion and of judgment between the courts of England and those of America upon the question whether, when a woman about to enter into the matrimonial relation conceals from her prospective husband the fact that she is pregnant at the time by another person, the conceal-

ment is such a fraud as to justify the annulment of the marriage.
See *Reynolds* v. *Reynolds,* 3 Allen, 605, for the American
doctrine upon the subject, and *Moss* v. *Moss* [1897] P. 276, for
the English ruling. We are justified in following the rule estab-
lished in our country, where the authorities on the point are
unanimous, or almost so. See the American & English Encyclo-
pedia of Law, vol. 19, 2d ed., pp. 1185, 1186, subject *Marriage,*
where the decisions are collected. It is settled, also, by the same
authorities and others that the husband will not be entitled to
have a decree for the annulment of the marriage on the ground
of such fraud, if, after its discovery by him, he has condoned it
by continuing to cohabit with his wife.

There is no serious difficulty, therefore, about the general
principles of law that are applicable in the present case; nor is
there any great difficulty about some of the salient facts in the
case. It is established by the testimony that these parties were
married on December 24, 1902; and that on May 15, 1903,
which was less than 5 months afterwards, a fully developed male
child was born to the appellee, of whom the appellant repudiates
the paternity. The appellant, testifying on his own behalf,
stated that his acquaintance with the appellee began in the year
1891, when he was about 18, and she was about 11 years of age;
that their intercourse then lasted for 2 or 3 years; that it was
then discontinued until about February 22, 1900, when he went
to see her and her family at their home in Maryland, near the
District line; that the next time he saw her was in December of
1902, when he called on her in response to a letter from her, and
when arrangements were forthwith made for their marriage,
which took place in the same month, as stated; and that he had
had no sexual intercourse with her before their marriage. He
further testified that it was about the 1st of March, 1903, that
he began to suspect her physical condition; that in March or
April of that year he met a physician in the street, while his wife
was with him, and asked him about her condition, and the physi-
cian informed him that she was then well advanced in preg-
nancy; that he continued, however, to cohabit with her; that, on

May 7, 1903, when they were in bed together, he had what he regarded as positive proof of pregnancy; that, immediately on the next day, May 8, 1903, he sent her home to her mother; and that the child was born on May 15. An attempt was also made to show, by the testimony of friends and relatives of the appellant, that he was slow of comprehension and educationally deficient; but we fail to see that this has any special bearing on the present case, further than that it is sought to be argued from it, and from his own direct testimony, when he was recalled to the witness stand, that he did not know at the time that he first testified the meaning of the word "cohabit," which was then used.

Now, apart from the fact of the marriage of these parties, and from the fact that a fully developed child was born thereafter prematurely with relation to the date of the marriage, the sole testimony in this case that bears upon the two important questions in the case is that of the appellant himself, wholly uncorroborated by other evidence. These two questions are: (1) Whether he was himself, or whether someone else was, actually the father of this child, the paternity of which is by law imputed to him until the contrary is shown; (2) whether, if he was not such father, he did not condone the fraud upon him, and preclude himself from the relief which he now seeks, by continued cohabitation with the appellee after the discovery of it. We are confronted with the inquiry whether the appellant himself is a competent witness to determine these two questions in his own favor. For it is to be remarked that the appellee has not appeared in the case at all, and has permitted it to go by default; and that counsel, who has been appointed by the court for the defense, under § 982 of the Code, to protect the public interest in the matter, has, in consequence of such persistent default, found it impossible to adduce any testimony adverse to the petitioner, and has been compelled to rely exclusively upon the cross-examination of the petitioner and his witnesses.

In the case of *Bergheimer* v. *Bergheimer,* 17 App. D. C. 381, we held that in divorce cases the parties to a suit are not competent to testify as witnesses in their own behalf. Therein we followed the ruling of the general term of the supreme court of the

District in the case of *Burdette* v. *Burdette,* 2 Mackey, 469, and the uniform rule of practice in this District. And this rule, we think, is not affected by § 1068 of the Code, which provides that "in both civil and criminal proceedings husband and wife shall be competent, but not compellable, to testify for or against each other." This section must be taken as qualified by § 964 of the Code, which provides a special rule of evidence for divorce cases. This § 964 provides that "no decree for a divorce, or decree annulling a marriage, shall be rendered on default, without proof; nor shall any admission contained in the answer of the defendant be taken as proof of the facts charged as the ground of the application, but the same shall in all cases be proved by other evidence." Now, it is very clear from this that no decree for a divorce or the annulment of a marriage can be given upon the mere unsupported petition of either husband or wife, even though the petition should be sworn to; and it is not apparent to us that the conditions are altered by the substitution of a deposition for the petition. The plain purpose of the law is to prohibit divorce or annulment of marriage upon the mere statement of one of the parties without corroborative evidence. This may be often difficult, and sometimes impossible, to be procured; and we may easily conceive of cases where the requirement would work hardship. But the reason of the requirement and the public policy to be subserved are apparent, and that public policy must prevail against individual cases of hardship.

In order to annul the marriage in the present case the one important thing to be shown is that the appellant is not the father of the child born during that marriage. This may be somewhat difficult of proof. The sole proof that we have of it is the bare statement of the appellant to that effect; but we think that under the statute this is not sufficient. There must be "other evidence" of it, as required by the statute, in order that the petitioner may succeed.

The same course of reasoning will apply to the other question raised, the question whether, even if the appellant be not the father of the child that was born, he did not condone the fraud

upon him by continued cohabitation after its discovery by him. It is clear that he had his suspicions aroused upwards of two months before he put away the appellee. During all that time he cohabited with her. It is true that he denied that he cohabited with her in the sense of having sexual intercourse with her. But he certainly cohabited with her in the sense that, if the question were one of the commission of adultery, as remarked in the opinion of the learned justice who heard the cause in the court below, the commission of the act would be inferred. Shall we infer the commission of an unlawful act, when under the same precise circumstances we should not infer the commission of a lawful act,—for, under the circumstances, it was lawful for these parties to have sexual intercourse with each other? The sole testimony which we have to the effect that there was no such intercourse is the revised evidence of the appellant himself to that effect, after he had testified in substance to the contrary. We do not think that under the law his sole uncorroborated testimony can be received as sufficient to establish a fact so vital to his case, notwithstanding the difficulty, perhaps even the impossibility, of procuring other proof.

While we have no reason to doubt the truthfulness of the appellant's statements in his testimony, yet, as the other evidence required by the statute is wanting in his case, we cannot see that there was any error is the refusal of the relief which he prayed. But, as there may be hardship in his case which further developments may establish, we think that his petition might well be dismissed without prejudice to his right to renew it hereafter, if testimony should be forthcoming sufficient for the purpose.

The decree appealed from will be affirmed, with costs, but with the modification that it shall be without prejudice to the appellant to renew it hereafter as he may be advised. *Affirmed.*

A motion by the appellant to modify the opinion and decree overruled July 8, 1904.