# WILLIAMSON *v.* WILLIAMSON.

---

**DIVORCE; HUSBAND AND WIFE; FRAUD.**

Misrepresentations as to mildness of temper and amiability of disposition by one of the parties to a marriage contract furnish no ground for declaring it void after consummation.

No. 2076.  Submitted February 11, 1910.  Decided March 1, 1910.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill for divorce. *Affirmed.*

The facts are stated in the opinion.

*Mr. Clayton E. Emig* for the appellant.

*Mr. Charles A. Barnard* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an action brought by appellant, Clyde L. Williamson, in the supreme court of the District of Columbia against his wife, Mabel Williamson, for the annulment of the marriage contract, on the ground of fraud. It appears that appellant became acquainted with appellee through a correspondence started by appellant's answering an advertisement in a paper issued by a matrimonial bureau, wherein it was represented that appellee desired the acquaintance of a young man matrimonially inclined. The correspondence from the start appears to have been conducted with remarkable ardor and activity, since, according to the record, about one hundred letters passed between April and November, 1906. As a sequel to this romantic adventure, an engagement followed, and appellant urged appellee to come to Washington to marry him, accompanying the request with the sum of $21. Appellee failed to appear at the appointed time, but wrote to appellant explaining her delay. It is alleged she gave as an excuse "that she had used part of said fund to assist her sister in a run-away from her father's house." Appellant, doubtless regarding this incident as conclusive proof of appellee's qualifications to become a loving and affectionate wife, and especially suited to preside over a peaceable and happy home, forwarded the further sum of $20, accompanying it with an urgent appeal for haste. This time she came. On the day of her arrival they were married. This was the first meeting of the parties. Appellee insisted that the ceremony be deferred

until they could have an opportunity of becoming better acquainted, but appellant, regarding the suggestion as a most unreasonable one, was insistent upon an immediate union, and, in two hours from the arrival of appellee, the parson in the meantime having been engaged, the ceremony was performed. Notwithstanding these precautions, appellant claims that he soon discovered his mistake, and he is now seeking the aid of the courts to relieve him from what he seems to regard as a bad bargain. His sole complaint is based upon what he denominates the "unbearable disposition" of appellee. It appears from his story that she does not possess that mild temper and amiable disposition which he expected to find in a helpmate selected from the bargain counter of a matrimonial bureau. He even goes so far as to claim that, in some of her letters, she falsely and fraudulently represented that she was possessed of a most amiable and lovable disposition, stating in his petition "that the defendant represented herself, among other things, to possess a most congenial and loving disposition, desiring the society of a loving husband, and to preside over a happy home, that her disposition was of a loving nature, her aim to make her companion for life a loving, useful helpmate." In this unbiased expression of opinion, upon a subject with which it cannot be assumed that appellee was wholly unfamiliar, appellant insists she was mistaken, and herein consists the fraud upon which this court is asked to declare a marriage contract void. Other minor details, such as the illness of appellee shortly after their marriage, and the customary misunderstanding with her mother-in-law, are incidentally referred to, but the contract is assailed chiefly upon the above ground of fraud.

It is well settled that mere misrepresentations as to social position, rank, fortune, manners, and disposition furnish no ground for declaring a marriage contract void. Misrepresentations of this kind are tolerated on the ground of public policy. The rule which has been adopted generally by the courts and text writers was well stated by Chief Justice Bigelow in *Reynolds* v. *Reynolds,* 3 Allen, 605, as follows: "In the absence of force or duress, and where there is no mistake as to the iden-

tity of the person, any error or misapprehension as to personal traits or attributes, or concerning the position or circumstances in life of a party, is deemed wholly immaterial, and furnishes no good cause for divorce. Therefore, no misconception as to the character, fortune, health, or temper, however brought about, will support an allegation of fraud on which a dissolution of the marriage contract, when once executed, can be obtained in a court of justice. These are accidental qualities which do not constitute the essential and material elements on which the marriage relation rests.   \*   \*   \*   The law therefore wisely requires that persons who act on representations or belief in regard to such matters should bear the consequences which flow from contracts into which they have voluntarily entered, after they have been executed, and affords no relief for the results of 'a blind credulity, however it may have been produced.' "

In the present case there is no claim of the concealment of any material fact that would, in law, vitiate a marriage contract. In fact, the evidence tends strongly to disprove the specific allegation upon which the charge of fraud is based. We find no reason for an abrupt termination of this romantic venture.

The decree of the court below dismissing the bill is affirmed, with costs, and it is so ordered.             *Affirmed.*