**Eugene M. ZOGLIO, Appellant,**

v.

**Jill Griffin ZOGLIO, Appellee.**

No. 2473.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 26, 1959.

Decided Feb. 2, 1960.

Herbert D. Horowitz, Washington, D. C., with whom Albert Ginsberg and Joseph H. Schneider, Washington, D. C., were on the brief, for appellant.

No appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellant's suit for the annulment of his marriage was dismissed by the trial court. The action, which was undefended, was brought pursuant to the general fraud provision of our domestic relations act[1] and although the complaint is no model of clarity, it alleges that the appellee, for the purpose of inducing. appellant to marry her, fraudulently represented that she would live and cohabit naturally with him.

The parties were married in the District of Columbia on April 3, 1959; eleven days later they separated. Prior to the marriage they discussed the possibilities of having a family and at this time appellant told the appellee of his opposition to birth preven- tion. As a result of one or more conversations on the subject, the appellee promised that contraception would not be practiced. Immediately after the marriage, however, she refused to have marital relations unless some means were used to prevent conception. An attempt to resolve their differences led to several discussions in the course of which the appellee revealed for the first time that she did not want to have any children. Appellant testified that his wife did not disclaim the making of her premarital promise, but said she wanted to marry him and had done so with the thought that he would change his views after marriage. When, after eleven days of marriage, there appeared to be no solution to the problem, the appellee left ap-

pellant and went to live with her sister in Baltimore. Appellant testified that during the short time they lived together there were no marital relations between the parties.

Appellant's testimony was corroborated to some extent by a friend of his who was a member of the wedding party. He testified that he talked to the appellee alone a short time after the couple returned from a brief wedding trip. In response to his question as to how married life was, she indicated that the marriage was not going well and told him, "[H]e won't use anything and I don't want to have any kids."

One of the primary purposes of matrimony is procreation. As was said in a much-quoted New York case: "Implicit in the marriage contract is the representation that the parties will have normal and natural relations and that they will not do anything which will frustrate the normal and natural result of those relations. Where nothing is said prior to the marriage by a spouse on the subject of children, it is presumed he or she intends to enter the marriage contract with all the implications, including a willingness to have children." Gerwitz v. Gerwitz, Sup., 66 N.Y.S.2d 327, 329. While it is not necessary to so decide in this case, the courts of New York and other states have uniformly held that one spouse is defrauded when the other at the time of the marriage has no intention of having natural relations which might result in the birth of children. See Gerwitz v. Gerwitz, supra; Schulman v. Schulman, 180 Misc. 904, 46 N.Y.S.2d 158; Coppo v. Coppo, 163 Misc. 249, 297 N.Y.S. 744; Maslow v. Maslow, 117 Cal. App.2d 237, 255 P.2d 65; Pisciotta v. Buccino, 22 N.J.Super. 114, 91 A.2d 629; Stegienko v. Stegienko, 295 Mich. 530, 295 N.W. 252.[2] We hold here that the fraud

---

1. Code 1951, § 30–103 provides: "The following marriages in said District shall be illegal, and shall be void from the time when their nullity shall be declared by decree, namely:

     *     *     *     *     *

"Second. Any marriage the consent to which of either party has been procured by force or fraud."

2. See also Annotations 28 A.L.R.2d 499, 507; 4 A.L.R.2d 227, 229.

does not consist of the unwillingness to have children or the failure to have normal and natural relations. The fraud consists of the promise to have normal and natural relations without any intention of keeping it and with the intention to deceive the other spouse.[3]

A different problem may confront the courts where the parties, as frequently happens, mutually agree before marriage to postpone parenthood, or where nothing is said on the subject before marriage and the conduct of the parties after marriage is such as to show acquiescence in contraception. There the matter becomes one for individual consciences in accordance with the religious and moral beliefs of the parties, and the courts are reluctant to hold in such circumstances that one is the victim of misrepresentation.[4]

In the present case, the matter of children and birth prevention was openly and frankly discussed before marriage. The allegations of the complaint and the evidence offered in support of them established that the fraud alleged is not made to rest on a promise implied from the marriage contract; the promise to refrain from unnatural practices was expressly made. If we are to believe the evidence, it shows that the wife's promise was made with full knowledge of appellant's disapproval of contraception and with no intention of respecting it after marriage. The evidence in fact shows that it was the wife's intention not to have children and to dissuade appellant from his views. Inasmuch as there is no evidence tending to show that the parties engaged in marital relations during the eleven days they lived together, there is no question of waiver or acquiescence involved.

We think the evidence here makes out a case of fraud justifying a decree of annulment. In so ruling we are mindful that the proof in a case of this kind should be clear and convincing. This is so particularly in an action that is undefended and normally an appellate court will accord great weight to the trial court's determination as to the sufficiency of the evidence and the credibility of the witnesses. In dismissing the case, the trial court made no comment on the credibility of the witnesses. It appears that the dismissal was made to rest solely on the sufficiency of the evidence as the court both orally at the conclusion of the trial and in its formal findings designated what it believed to be the specific deficiencies in the evidence. We have carefully studied these references and are of the belief that the deficiencies indicated do not relate to the issues involved as we view the case. The order of the trial court is accordingly reversed with instruction to grant the decree sought.

It is so ordered.

3. Gerwitz v. Gerwitz, supra; Maslow v. Maslow, supra.

4. See e. g. our holding in Riedl v. Riedl, D.C.Mun.App., 153 A.2d 639 applying New York law.