MARY V. FATTIBENE *v.* ARTHUR T. FATTIBENE

BOGDANSKI, PETERS, ARMENTANO, SHEA and WRIGHT, Js.

434

Argued January 7—decision released April 14, 1981

*Arthur T. Fattibene*, pro se, the appellant (defendant).

*John F. Kavanewsky*, with whom, on the brief, was *Thomas F. Maxwell, Jr.*, for the appellee (plaintiff).

ARMENTANO, J. The plaintiff married the defendant in Washington, D.C. on May 30, 1953, and commenced this dissolution action in April, 1976, alleging that irreconcilable differences between them had irretrievably broken down their marriage. The defendant alleged by way of an affirmative defense that the marriage was invalid because the plaintiff was not legally divorced from her prior living husband at the time of her marriage to him. In addition to this defense, the defendant counterclaimed alleging intolerable habitual intemperance, fraud in the inducement of the marriage, and irretrievable breakdown of the marriage.

After a contested hearing before a state referee, the court found that the marriage was a valid one, and that it had broken down irretrievably; it rendered a decree dissolving the marriage. The court ordered (1) that the marital real property be sold within eighteen months and the proceeds transferred to the plaintiff; (2) that the household furniture, furnishings, appliances and all other articles of personal property be divided equally; (3) that all of the remaining real and personal assets, excluding the plaintiff's automobile, become the property of the defendant; (4) that the arrears on the pendente lite order, in the amount of $6700, be paid to the plaintiff within six months; (5) that pending the sale of the residential real property, the defendant pay the mortgage and tax installments and utility bills; (6) that a counsel fee of $3000 be paid to the plaintiff; (7) that periodic alimony of $70 a week be awarded to the plaintiff; (8) that lump sum alimony of $10,000 be paid to the plaintiff within one year; and (9) that certain stock in the Babson & Wilcox Company be transferred to the defendant. Subsequent to this order, the court awarded an additional counsel fee of $1000 to the plaintiff to cover the cost of this appeal.

The defendant has appealed claiming that the court erred (1) in finding that the parties' marriage was valid; (2) in awarding periodic alimony; and (3) in awarding counsel fees. The defendant has not appealed or contested the division and assignment of real and personal property mandated by the court.

### Validity of the Marriage

Prior to her marriage to the defendant, the plaintiff had previously married James T. Williams. In a decree dated June 6, 1952, the United States Dis-

trict Court for the District of Columbia awarded the plaintiff an absolute divorce from Williams. On appeal, the defendant claims the decree dissolving the marriage was invalid, therefore making his marriage to the plaintiff void. The first issue is not whether the marriage between the parties is void because of an invalid divorce decree, but rather, whether the divorce decree can be collaterally attacked by the defendant.

The rule is the same in both Connecticut and the District of Columbia; the defendant has no standing to attack collaterally an earlier divorce decree to which he was a stranger and in which he had no legally protected interest which would have been affected by the decree itself at the time it was rendered. See *Tippin* v. *Tippin,* 148 Conn. 1, 6, 166 A.2d 448 (1960); *Tyler* v. *Aspinwall,* 73 Conn. 493, 47 A. 755 (1901); *Murphy* v. *Murphy,* 34 Conn. Sup. 251, 386 A.2d 274 (1978); *Cocco* v. *Cocco,* 23 Conn. Sup. 275, 181 A.2d 266 (1962); see also *Brown* v. *United States,* 196 F.2d 777 (U.S. App. D.C. 1952); *In re Hanson's Estate,* 210 F. Sup. 377, 383–84 (D.D.C. 1962), aff'd sub nom., *Saunders* v. *Hanson,* 327 F.2d 889 (D.C. Cir. 1963), cert. denied, 379 U.S. 820, 85 S. Ct. 41, 13 L. Ed. 2d 31 (1964).

Since there is no claim that the defendant had any interest at all in the decree divorcing the plaintiff from Williams at the time it was rendered, the rule precludes us from considering in this appeal the validity of the divorce decree.

During the course of the trial, the defendant sought to admit into evidence a certified copy of the complaint filed in the United States District Court for the District of Columbia by which his wife had initiated the action to divorce her former

husband, Williams. Because the defendant lacked the standing to attack the divorce decree that resulted from that complaint, any error involved in that ruling would be harmless. Furthermore, we need not decide this claim on its merits as the plaintiff has failed to follow the rules of procedure set out in Practice Book § 3060F (c) (3). See *State* v. *Johnson,* 183 Conn. 156, 163, 438 A.2d 855 (1981), and citations therein.

In the counterclaim to the complaint, the defendant sought an annulment of the marriage based on the plaintiff's fraudulent nondisclosure at the time of the marriage of her prior marital status and of the previous birth of a child. Although there is evidence in the record to the contrary, the defendant alleges that he did not learn of the nondisclosed facts until the commencement of this action, over twenty-five years after the wedding ceremony, and never condoned the plaintiff's fraud or cohabitated with her after discovering it. The trial court decided that a valid marriage existed between the parties and dissolved it, rather than declare it null and void. The defendant claims on appeal that the trial court erred.

The Superior Court has authority to annul a marriage performed in another state if the marriage would have been invalid in that state or violates a strong public policy of this state. Since the parties married in Washington, D.C., we must look to the law of that jurisdiction. See General Statutes § 46-32 (b)[1] (now § 46b-40 [b]); *Catalano* v. *Catalano,* 148 Conn. 288, 291, 170 A.2d 726 (1961);

---

[1] General Statutes § 46-32 (b) (now § 46b-40 [b]) provided: "An annulment shall be granted whenever, from any cause, the marriage is void or voidable under the laws of this state or of the state in which such marriage was performed."

*Schibi* v. *Schibi,* 136 Conn. 196, 198, 69 A.2d 831 (1949); *Davis* v. *Davis,* 119 Conn. 194, 197–98, 175 A.2d 574 (1934); *Delaney* v. *Delaney,* 35 Conn. Sup. 230, 232–33, 405 A.2d 91 (1979).

Section 16-903 of the District of Columbia Code provides that a "decree annulling the marriage as illegal and void may be rendered on any of the grounds specified by sections 30-101[2] and 30-103 as invalidating a marriage." Section 30-103 provides in part: "The following marriages in said District shall be illegal, and shall be void from the time when their nullity shall be declared by decree, namely: . . . Second. Any marriage the consent to which of either party has been procured by force or fraud."[3] A marriage falling within § 30-103 is not void ab initia but voidable. *Martin* v. *Martin,* 240 A.2d 363, 365 (D.C. App. 1968); *Duley* v. *Duley,* 151 A.2d 255, 257 (M.C. App., D.C., 1959). The burden is on the one claiming the fraud to prove its existence by clear and convincing proof. *Zoglio* v. *Zoglio,* 157 A.2d 627, 629 (M.C. App., D.C., 1960); see *Davis* v. *Davis,* supra, 203–204.

"[F]raud in its procurement will vitiate the contract upon which marriage is based as well as any other contract, and will justify its annulment by the courts." (Citations omitted.) *Lenoir* v. *Lenoir,* 24 App. D.C. 160, 162 (1904). The rule to determine

[2] Section 30-101 of the District of Columbia Code prohibits certain marriages and provides that such marriages "shall be absolutely void ab initio." It leaves little discretion to the court. This section is not applicable to this appeal since a marriage procured by fraud is not prohibited by this section.

[3] Section 16-904 (c) of the District of Columbia Code provides in part: "Marriage contracts may be declared void in the following cases: . . . Third. Where such marriage was procured by fraud or coercion." Most of the reported cases, however, make reference to § 30-103, and not this section.

whether fraud in a case is sufficient to justify an annulment is set out in *Reynolds* v. *Reynolds,* 85 Mass. (3 Allen) 605 (1862). See *Zoglio* v. *Zoglio,* supra; *Williamson* v. *Williamson,* 34 App. D.C. 536, 538–39 (1910); *Lenoir* v. *Lenoir,* supra, 163; Clark, Domestic Relations § 2.17, pp. 103–106. The *Reynolds* case established the doctrine of essentials which requires the misrepresentations claimed by the party seeking an annulment to be related to the sexual obligations of the marriage, that is, the ability or willingness to have sexual relations and the ability to bear children. See *Reynolds* v. *Reynolds,* supra; Clark, loc. cit.; Kingsley, "Fraud as a Ground for Annulment of a Marriage," 18 So. Cal. L. Rev. 213, 214 (1945).

This rule is followed in the reported decisions of the District of Columbia. In the following cases the court granted an annulment based on fraud: *Kaufman* v. *Kaufman,* 164 F.2d 519 (U.S. App. D.C. 1947) (husband unable to have sexual relations); *Stone* v. *Stone,* 136 F.2d 761 (U.S. App. D.C. 1943) (husband concealed fact he suffered from veneral disease); *Zoglio* v. *Zoglio,* supra (wife failed to keep promise to have normal and natural sexual relations). On the other hand, the claimed fraud did not justify an annulment in the following cases: *Burroughs* v. *Burroughs,* 4 F.2d 936 (U.S. App. D.C. 1925) (despite sexual relations, wife barren); *Williamson* v. *Williamson,* supra (misconception by husband of wife's personality traits).

There is no evidence in the appeal before us that the nondisclosures by the plaintiff interfered with the sexual relations of the parties or prevented the birth of children. On the contrary, two children were born of this marriage. The nondisclosures

were more similar to a "misconception as to the character, fortune, health, or temper, [which] however brought about, will [not] support an allegation of fraud . . . . These are accidental qualities which do not constitute the essential and material elements on which the marriage relation exists." *Williamson v. Williamson,* supra, 539; Clark, op. cit., pp. 113–14.

Although we are unable to find any District of Columbia case in point, two Connecticut cases are factually similar. In *Gordon* v. *Gordon,* 11 Conn. Sup. 302 (1942), the husband had failed to disclose to his wife his prior criminal record and the existence of four minor children whom he was boarding out. In *Fournier* v. *Fournier,* 14 Conn. Sup. 171 (1946), the claimed fraud rested on the wife's nondisclosure of a prior marriage to a man whom she never divorced but as to whom she had a good faith belief, never proven false, that he was dead. In both cases " 'the existence or nonexistence of the fact thus concealed or misrepresented [did not] operate, as between the parties to the marriage, to prevent some essential purpose of marriage and work a practical destruction of that relation.' *Gould* v. *Gould,* 78 Conn. 242, 261; *Lyman* v. *Lyman,* 90 Conn. 399, 402." *Fournier* v. *Fournier,* supra, 173; see *Gordon* v. *Gordon,* supra, 302. In the absence of a contrary decision, it will be presumed that the law of the District of Columbia is the same as the law of this state. *Davis* v. *Davis,* supra, 202; *Artman* v. *Artman,* 111 Conn. 124, 129, 149 A. 246 (1930).

The trial court did not err when it failed to grant the defendant's claim for an annulment based on the plaintiff's nondisclosures or the alleged invalid divorce decree.

## Periodic Alimony

The defendant also claims that the court erred in awarding periodic alimony.[4] "The primary basis for an award of alimony has been not to punish a guilty spouse but to continue the duty to support the other who, in legal contemplation, was abandoned." *Tobey* v. *Tobey,* 165 Conn. 742, 748, 345 A.2d 21 (1974). In awarding alimony, the court exercises its sound discretion, taking into consideration the circumstances of the case such as the estate of the parties, their incomes, ages, conditions of health, stations in life, and earning capacities. *Whitney* v. *Whitney,* 171 Conn. 23, 27–28, 368 A.2d 96 (1976); *Tobey* v. *Tobey,* supra; *Heard* v. *Heard,* 116 Conn. 632, 636, 166 A. 67 (1933). These criteria have been codified in General Statutes § 46-52 (now § 46b-82).[5]

---

[4] The defendant also claims that the trial court's award of periodic alimony payments to the plaintiff was so gender biased as to violate the equal protection clause of both the state and federal constitutions. His argument, however, is more of an attack on the concept of alimony. We have treated it as such.

Even though the defendant did not indicate specifically which statutes allegedly deprived him of equal protection or indicate the affected class, it is noted that General Statutes § 46-52 (now § 46b-82) authorized the court to order "either of the parties to pay alimony to the other . . . ." The Connecticut statute avoids the equal protection constitutional infirmity of the statutes of some other states which provide that husbands, but not wives, may be required to pay alimony. See *Orr* v. *Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306 (1979). Furthermore, General Statutes § 46-54 (now § 46b-86) provides that the defendant may request a change of the alimony award "upon a showing of a substantial change in the circumstances of either party."

[5] General Statutes § 46-52 (now § 46b-82) provided in part: "The superior court . . . may . . . order either of the parties to pay alimony to the other . . . . In determining whether alimony shall be awarded, and the duration and amount of the award, the court . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health,

At the time of the hearing, the plaintiff was fifty-eight years of age and the defendant, a self-employed patent attorney, was fifty-six years of age. The parties owned six pieces of real estate, including their residence, which the court treated as jointly owned property. The total value of the defendant's equity was $308,983.15. In addition, the defendant had total liabilities of $20,383.92. This results in a net equity of $288,599.23. The plaintiff lists the same assets, showing the parties' total equity to be $281,299.61. In 1977, the defendant's taxable income was $19,355. In 1978, the defendant's taxable income was $9412. The plaintiff has a vision problem in her left eye. The highest hourly rate the plaintiff had been able to earn at the time of the hearing was $4 an hour, and her highest gross earnings were approximately $130 a week.

The action of the trial court is not to be disturbed unless it abused its legal discretion, and in determining this the unquestioned rule is that great weight is accorded the action of the trial court and every reasonable presumption should be indulged in favor of its correctness. *deCossy* v. *deCossy*, 172 Conn. 202, 204, 374 A.2d 182 (1977), and citations therein. In determining whether the trial court abused its discretion the ultimate issue is whether the court could reasonably conclude as it did. *Grinold* v. *Grinold*, 172 Conn. 192, 374 A.2d 172 (1976). Taking into consideration the earnings and

station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46-51 [now § 46b-81] and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent securing employment."

assests of both parties at the time of the hearing, the duration of the marriage and other circumstances found, the court did not abuse its discretion in awarding to the plaintiff $70 a week alimony.

## INHERITANCE

The defendant's claim that the court erred in excluding evidence of a relatively large inheritance likely to be received by the plaintiff on the death of her mother is without basis. "In *Krause* v. *Krause,* 174 Conn. 361, 364–65, 387 A.2d 548 (1978), we held that evidence of the net worth of a spouse's mother was properly excluded because any potential inheritance the spouse might receive upon the mother's death was merely an inchoate right and was too speculative a factor upon which to base an order assigning property." *Thompson* v. *Thompson,* 183 Conn. 96, 98–99, 438 A.2d 839 (1981). The court was correct in excluding from its consideration the plaintiff's potential inheritance from her mother.

## COUNSEL FEES

The defendant assigns as error the order of the state referee requiring him to pay a total of $4000 in counsel fees. The authority to allow counsel fees in a dissolution action was granted to the court by General Statutes § 46-59 (now § 46b-62),[6] which stated that the considerations in determining the amount of the grant shall be similar to those invoked in setting the amount of alimony under General Statutes § 46-52 (now § 46b-82). See

---

[6] General Statutes § 46-59 (now § 46b-62) provided: "In any proceeding seeking relief under . . . this chapter . . . the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46-52. . . ."

*deCossy* v. *deCossy,* supra, 206. The basis of an allowance to prosecute or defend is that the wife should not be deprived of her rights because she lacks funds which may be supplied from property in which as a wife she has a real interest but which is usually within the control of the husband. *Bielan* v. *Bielan,* 135 Conn. 163, 169, 62 A.2d 664 (1948); *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501 (1936). Such an allowance is within the sound discretion of the court. *LaBella* v. *LaBella,* 134 Conn. 312, 319, 57 A.2d 627 (1948); *Valluzzo* v. *Valluzzo,* 104 Conn. 152, 155, 132 A. 406 (1926). In this case, the evidence is that the plaintiff had a substantial amount of jointly owned real estate. She did not have assets in liquid form or ready money to pay for counsel fees. Under these circumstances, we cannot say that the state referee erred in making the allowances. The amount of the total awards of $4000 is not so large as to constitute an abuse of discretion.

There is no error.

In this opinion the other judges concurred.