[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff (hereinafter the husband) and the defendant hereinafter the wife) were married on October 19, 1968, in Lancashire, England. Their one minor daughter, Christanne, was born on October 4, 1977 and is now seventeen years of age. A second daughter, now twenty-two years of age, is self-supporting. This limited contested trial was held on September 16, 19 and 20, 1994, at which time both parties testified.
The wife testified that the marriage began to deteriorate in 1987 and after some marriage counselling, they were still unable CT Page 11834 to resolve their differences. In October, 1993, the husband moved out of the marital residence into a studio apartment, and they have lived apart for the past year. The wife alleged the husband had an extramarital affair, which he denied.
After hearing the testimony, the court finds the marital breakdown was caused by a failure to communicate and to understand each other's needs for love and affection and both parties were equally at fault for the breakdown. A decree of dissolution of the marriage shall enter on the ground of irretrievable breakdown.
Some of the relevant facts are not in dispute. For the first twenty years of this twenty-six year marriage, the wife assumed the traditional role of mother and homemaker, caring for the husband and their two daughters. The husband worked as a graphic designer earning the money to support the family. In 1989, the husband lost his job at Chesebrough Ponds. He then started his own business as a graphic designer, working out of the marital home. The business was incorporated as a Chapter S corporation known as Courtfield, Inc. In May, 1991, the wife began working with him on a full time basis as an administrative manager and bookkeeper. The 1993 federal tax return prepared by the parties' accountant confirmed an equal ownership of fifty (50%) percent of the stock, which resulted in each receiving $57,977. For tax purposes and in fact, they were equal partners.
The wife kept the books during the past five years and deposited all the income and paid all the expenses from the business out of a joint checking account. She had full knowledge of the earnings and expenses of Courtfield, Inc.
The husband's financial affidavit dated September 16, 1994, was prepared by Ms. Kimberly Keating from the business records of Courtfield, Inc. Ms. Keating has a degree in accounting from Fairfield University. She was previously employed as assistant comptroller for the Town of Weston and was the chief financial officer for a Fairfield County corporation earning $70,000 annually until she started her own business in 1992. Ms. Keating's testimony was responsive and credible, both on direct and cross-examination. Her answers were based on personal knowledge after having been the part-time bookkeeper for Courtfield since November, 1993.
The 1993 federal tax return of Courtfield, Inc. listed annual net income of $115,955 (plaintiff's exhibit A), which was divided CT Page 11835 equally at $57,977 between the parties for tax purposes. The estimated tax of $11,865 would provide the husband with an annual net income of $46,112. In his financial affidavit dated September 16, 1994, the husband listed his weekly income of the past thirteen weeks at $1,189 less $253 for taxes or a net weekly income of $936 or $48,672 annually. The husband's current net income is substantially the same as reported in his 1993 tax return; in fact, it is almost $2,560 more annually at present.
The court does not find this to be an earning capacity case as the wife claimed because the facts here are contrary to those found in Schmidt v. Schmidt, 180 Conn. 184, 189 (1980) and Millerv. Miller, 181 Conn. 610 (1980). In those cases, the spouse left his normal employment for a job that paid much less or reduced his working hours to deny or limit his duty of support to a spouse. It is undisputed in this case that the husband is working as a graphic designer approximately one hundred hours a week or fifteen, hours a day, seven days a week.
The wife's financial affidavit shows no present income, with weekly living expenses of $977.18 or $4,199.08 monthly. The expenses to maintain the marital home are approximately $2300 a week. The income and expenses listed on both financial affidavits show living expenses substantially exceed income. The parties will need to adjust their present lifestyles based on their current financial statements.
With this background, the primary issues in dispute are (1) the amount and term of periodic alimony; (2) the division of the, jointly held marital home at 76 Riverside Avenue in Westport with a net equity of about $200,000; and (3) the division of the IRA accounts listed at $66,691 owned solely by the husband.
When making awards of alimony or the assignment of property, the court is required to consider the following factors under §§ 46b-81 and 46b-82 of the General statutes: ". . . the length of the marriage, the causes for the . . . dissolution of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties." No one factor is controlling. The relevant considerations vary from case to case and depend upon the circumstances of the parties. Chamblis v. Chamblis, 171 Conn. 278,279 (1976).
In determining the amount and term of alimony, the court must CT Page 11836 base its award on the current net income available to a spouse. The primary basis for alimony is the continuing duty to support a spouse. Fattibene v. Fattibene, 183 Conn. 433, 441 (1981); Tobeyv. Tobey, 165 Conn. 742, 747.
In his claims for relief, the husband urges a periodic alimony award of $250 a week, or $13,000 annually, for seven years. The wife claims lifetime alimony of $5,000 a month or $60,000 a year. This is a twenty-six year marriage. Both parties are college graduates and capable of productive employment. The wife is now 46 years old, the husband forty-nine and both are in good health. The wife is currently earning no income; however, she is a licensed real estate sales person and in 1993 earned $13,433.00. The husband is a successful graphic designer.
The court has considered all of the testimony and exhibits, the criteria mandated in §§ 46b-81, 46b-82, 46b-84 and46b-62 and the applicable case law. "The court is not obligated to make express findings on each of the statutory criteria." Weiman v.Weiman, 188 Conn. 232, 234 (1982). The following orders may enter:
1. ALIMONY: The husband shall pay the wife alimony of sixteen Hundred ($1600) Dollars a month and child support of $900 a month beginning December 1, 1994, in accordance with the child support guidelines, for a total of $2500 a month, until the minor child attains her majority on October 4, 1995, or graduates from high school, whichever is later.
 When the child support obligation terminates, this award shall be reduced to $2,000 a month and continue until the death of either party, the wife's remarriage or cohabitation pursuant to § 46b-86 (b) of the General statutes. This alimony award is about one-half of the husband's current annual income of $48,672.
 Both parties shall file the past year's income tax return with the other by May 1 of each year. The father shall be entitled an exemption for the minor child on his 1994 and 1995 income taxes.
2. MARITAL RESIDENCE: (a) The jointly owned marital residence located at 76 Riverside Avenue, Westport, Connecticut shall CT Page 11837 be immediately listed for sale at a price agreed to by the parties. If they cannot agree on a price, each shall choose a real estate appraiser. If the two appraisers cannot come to an agreement, they will then choose a third appraiser and the listing price shall be the average of the three appraisals. The cost of said appraisals shall be shared equally by the parties. The parties agree to accept any bona fide offer within five (5%) percent of the listing price. The court shall retain jurisdiction to resolve any dispute relative to this sale.
 (b) The wife shall have exclusive possession of the marital home until the sale is completed. The husband shall also pay the wife Seven Hundred Sixty-five Dollars and Forty Cents ($765.40) until the house is sold, which is one half of the monthly mortgage payment of $1530.80.
 (c) The net proceeds of the sale shall be divided equally (50%-50%) between the parties after payment of all closing expenses and joint debts of $93,355 as shown on Schedule C of the husband's financial affidavit.
3. OTHER REAL ESTATE: The time share condominium located at Shawnee, Delaware, which is jointly owned, shall be immediately listed for sale for $8,000, the value estimated on the parties' affidavits, or at a lesser price agreeable to the parties. The net proceeds from the sale of this time share shall be divided equally (50%-50%) between them.
4. IRA ACCOUNTS: The husband shall assign to the wife one half (50%) of his IRA-Pension Account listed at $66,691 on his financial affidavit by executing a Qualified Domestic Relations Order, which will be prepared by the wife's counsel. The court reserves jurisdiction over this order until approved.
5. CUSTODY AND VISITATION: The parties shall have joint legal custody of the minor child with physical custody with the mother and liberal and flexible visitation with the father.
6. MEDICAL EXPENSES: The parties shall equally share the cost of all medical and dental expenses incurred on behalf of the minor child. The husband shall pay the premiums for the wife's insurance for one year from date of this judgment. CT Page 11838
7. LIFE INSURANCE: (a) The husband shall maintain and pay the premiums for $125,000 of his current life insurance for so long as the alimony and support orders remain effective. The wife shall be named primary beneficiary.
 (b) The wife shall have the option to pay the premiums on the balance of the husband's current $250,000 life insurance now in effect.
8. LIABILITIES: The parties shall be equally responsible for the joint debts listed as $93,355 on Schedule C of the husband's financial affidavit dated September 16, 1994. If they are not paid by the time the marital home is sold, those unpaid joint debts shall be paid from the proceeds of the sale.
9. PERSONAL PROPERTY: Each party shall retain any and all personal property now in his or her possession. The parties shall retain possession of the vehicles they presently drive subject to encumbrances, which shall be their own responsibility. The parties shall retain the bank accounts and jewelry in their possession. In the event of a dispute, the matter is referred to Family Relations for mediation.
10. ATTORNEY'S FEES: Each party shall be responsible for his or her own attorney's fees.
Judgment may enter in accordance with the foregoing orders.
ROMEO G. PETRONI, JUDGE