[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above-captioned matter comes before this Court on Plaintiff's motion, dated December 24, 1997, seeking, inter alia, (i) a termination of his alimony obligation to the Defendant as provided in a decree of dissolution of marriage entered by the Court, Vasington, J., on September 5, 1996, (the "Decree") and (ii) the repayment of certain alimony payments which he has previously made to the Defendant. By contempt citation dated February 9, 1998, the Defendant seeks, inter alia, a finding that the Plaintiff is in contempt by reason of his failure to make certain payments of alimony as required by the Decree.
The relevant facts are largely undisputed. The parties were married in 1972. In 1995, the Plaintiff commenced an action against the Defendant seeking a dissolution of the marriage. The matter proceeded to trial in August of 1996 resulting in the entry of the Decree. In its Memorandum of Decision, the Court found that, although both parties substantially contributed to the breakdown of the marriage, the conduct of the Defendant was more culpable as a result of an affair which she had commenced with an individual named Michael Gauvin (Gauvin). The Court further found that, soon after the commencement of the action, the Defendant left the marital home and was renting an apartment in Norwich where Gauvin continued to visit her at times. The Court found that the Defendant and Gauvin did not plan to marry. CT Page 9274 After considering the evidence in light of the applicable statutes, the Court ordered, inter alia, that the Plaintiff pay to the Defendant alimony (on a declining basis) "for five years, her death, remarriage or cohabitation with an unrelated male, whichever is the first to occur." (Emphasis added.) Plaintiff, seeking a termination of his alimony obligation under the Decree, alleges in his motion that, on or about November 7, 1997, the Defendant moved out of her apartment and commenced "cohabiting" with Gauvin at his residence. Soon after the filing of this motion, Plaintiff ceased making alimony payments to the Defendant which, in turn, prompted her issuance of a contempt citation.
The Defendant stipulates that (i) she has been living with Gauvin (in his one-bedroom residence) since November 7, 1997, and (ii) she and Gauvin had relations prior to the entry of the Decree and continued to do so to the date of the hearing on the motions presently before this Court. Additional findings of fact are supplied in the discussion set forth below. The essence of the controversy involves a determination whether Defendant's relationship with Gauvin constituted "cohabitation" within the meaning of the Decree.
The Court notes at the outset that the Plaintiff seeks to be relieved of his alimony obligation under the cohabitation provision of the Decree. His motion does not seek relief under the separate and independent statutory basis provided by C.G.S. § 46b-86(b) (the "Statute").[1] Accordingly, the Court is limited in its analysis to the operative effect of the Decree, and relief cannot be granted under the Statute. Connelly v.Connelly, 191 Conn. 468, 464 A.2d 837 (1983).
The Court also notes that the Defendant does not claim that the language in the Decree terminating alimony, inter alia, upon her "cohabitation with an unrelated male" is an incorporation of the Statute. In other words, she (and apparently the Plaintiff as well) interprets the cohabitation provision of the Decree not to require an alteration of her financial needs as would otherwise be required under the Statute. Notwithstanding that such an interpretation would impose, in some respects, a lesser burden on the Plaintiff were he to seek a termination of alimony under the Statute (because he would be relieved of the burden of proving an alteration of the Defendant's financial need)[2], the Defendant did not appeal from this or any other portion of the Decree.
The issue of whether a trial court can condition the CT Page 9275 termination of alimony upon "cohabitation" rather than the Statute with its dual-pronged requirements ("living together" and "alteration of financial needs") has been addressed recently by the Appellate Court. In Mihalyak v. Mihalyak, 30 Conn. App. 516,521-523, 620 A.2d 1327 (1993), the Appellate Court found that a judgment, entered pursuant to a stipulation of the parties, which provided for the termination of alimony upon the recipient's cohabitation should be enforced in accordance with its terms. InDeMaria v. DeMaria, 47 Conn. App. 729, 707 A.2d 741 (1998), the Appellate Court addressed an order identical to that presently before this Court. There, as here, a judgment had entered following a trial which provided for the termination of alimony upon, inter alia, cohabitation by the [alimony recipient] with an unrelated male. . .". Upon the obligor's subsequent motion to terminate alimony pursuant to the terms of the judgment, the trial court denied relief based upon its findings that, although the alimony recipient was living with another person, there was no evidence that this living arrangement had altered her financial needs (as required by the Statute). On appeal, the Appellate Court, in reversing the trial court's ruling, determined that proof of cohabitation alone is sufficient to terminate alimony where relief is sought pursuant to a clause in the underlying judgment (whether entered pursuant to stipulation or after trial) that alimony is to terminate upon "cohabitation" without reference to any alteration of the cohabiting party's financial needs.[3]
The Defendant opposes Plaintiff's request for relief on two grounds. First, she claims that her relationship with Gauvin doesn't rise to the level of "cohabitation". Second, she contends that enforcement of the "cohabitation" clause is unconstitutional. The Court will address the issues in the order they were raised.
"Cohabitation" is the dwelling together of a man and woman in the same place in the manner of husband and wife. Wolk v. Wolk,191 Conn. 328, 332, 464 A.2d 780 (1983). It is clear that the existence of sexual relations, while certainly a factor in assessing the issue of cohabitation, is not necessarily dispositive of the issue. In this case, however, the Plaintiff has demonstrated far more than a sexual relationship between the Defendant and Gauvin. The Court finds that the Defendant and Gauvin have been residing together in the same residence since November 7, 1996; that this living arrangement was the culmination of a relationship which had begun much earlier; that CT Page 9276 the Defendant and Gauvin at the time they commenced residing together did so with no apparent intention to change that arrangement at any time in the future; that the Defendant and Gauvin have maintained a monogamous relationship with each other; that they regularly have dinner together; that they have socialized as a couple with others outside the home; and that they have traveled together in seeing other family members. Although the Defendant and Gauvin have, in certain respects, maintained their financial affairs separately, each has derived economic benefit from the relationship (with the Defendant paying for groceries at times and lending Gauvin funds for various home improvements, and Gauvin paying the mortgage and utilities with respect to the residence.)[4] Finally, as to the Defendant's claimed intention to relocate to Florida to be with her daughter (who has recently had a child), it remains to be seen whether (i) such a move actually occurs and, if so, (ii) whether it occurs with or without Gauvin. More importantly, however, there is no evidence which suggests that such a move was contemplated when the Defendant and Gauvin commenced residing together in early November (six months prior to the hearing held on the motions presently before the Court). Stated differently, if the Defendant was cohabiting with Gauvin within the meaning of Decree, that fact alone triggered a termination of alimony under the Decree without regard to the occurrence of subsequent events. Accordingly, the Court concludes that the Defendant is, and for a long time has been, cohabiting with an unrelated male within the meaning of the Decree.[5]
Finally, the Defendant, in conclusory fashion, contends that the enforcement of the "cohabitation" provision in the Decree is unconstitutional because (i) virtually all alimony awards are made to women, and (ii) women are a protected class under state and federal law. The Court rejects this contention for many reasons. First, neither Defendant's memorandum submitted to the Court nor the oral argument presented by counsel presents any meaningful legal analysis or relevant authority to support this claim. Second, to the extent the Defendant takes issue with the "cohabitation" provision in the Decree, she should have pursued appellate relief at the time the Decree entered. Third, the Defendant cannot be heard to complain about a "cohabitation" provision in the Decree when her own proposed orders submitted to the trial court (as to which the Court takes judicial notice) requested that a term of alimony be ordered which would be sooner terminable upon Defendant's "death, remarriage or cohabitation." Finally, notwithstanding Defendant's views regarding the CT Page 9277 frequency with which women, as opposed to men, receive alimony, the alimony statute (C.G.S. § 46b-82) does not prompt such a result and our courts have rejected equal protection claims when the underlying basis for the Court's action is gender neutral.See Fattibene v. Fattibene, 183 Conn. 433, 441, 441 A.2d 3
(1981); State v. Kelley, 229 Conn. 557, 565, 643 A.2d 854 (1994).
The Court finds that the Defendant and Gauvin have been cohabiting within the meaning of the Decree. Although the Defendant disputes the characterization of her relationship with Mr. Gauvin as one of "cohabitation", she did not disagree with the Plaintiff's claim that, if cohabitation were found by the Court, then the rights of the parties are governed by Mihalyak, supra. Specifically, the Court in Mihalyak found that the "alimony termination provision was automatic and self-executingupon cohabitation, just as it would have been upon the remarriage or the death of either party." Mihalyak, supra, at 1330 (Emphasis in original.) This Court finds that the language in the Decree is similarly unambiguous and, accordingly, the Plaintiff's obligation to pay alimony terminated effective November 7, 1997. The Plaintiff is entitled to reimbursement for all payments made to the Defendant for periods subsequent to November 7, 1997.
The Court has also considered C.G.S. § 46b-62 on the issue of whether an award of attorney's fees to either party is appropriate and concluded, based upon the criteria referenced in the statute and the facts before the Court, that each party should be responsible for his or her own respective attorney's fees. Although the Plaintiff's motion does not specifically request an award of interest on the reimbursement to be made by the Defendant, Plaintiff's Memorandum Re: Termination of Alimony, dated April 8, 1998, references Mihalyak and the propriety of an award of interest in these circumstances. Construing Plaintiff's memorandum to set forth a request for such interest, the Court finds that such an award is not warranted under the circumstances present in this case.
 ORDER
1. Plaintiff's Post-Judgment Motion Re: Termination of Alimony, Repayment of Alimony Payments and Attorney's Fees and Costs is granted in part that Plaintiff's alimony obligation to the Defendant terminated effective November 7, 1997 and that the Defendant reimburse to the Plaintiff all alimony payments which CT Page 9278 she received from him for periods subsequent to that date); and denied in part (that no attorney's fees or interest are awarded); and
2. Defendant's Contempt Citation, dated February 9, 1998, being premised upon Defendant's purported entitlement to alimony subsequent to November 7, 1997, is dismissed.
Dated this 28th day of July, 1998 at Norwich, Connecticut.
Solomon, J.